THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MILDRED MUSGROVE,           ) | |
|                                                         ) | |
|         Plaintiff                                 ) | |
| V.                                                    ) | |
|                                                         ) | Case No. 06-1861 (EGS) |
|                                                         ) | Judge Emmet Sullivan |
| THE GOVERNMENT OF THE DISTRICT ) | |
| OF COLUMBIA                          ) | NEXT EVENT: |
|                                                         ) | Mediation |
|         Defendant                            ) | 22 May 2008, 2:00 p.m. |
|                                                         ) | |

## SECOND AMENDED COMPLAINT OF DISCRIMINATION IN EMPLOYMENT

### INTRODUCTION

1. This complaint alleges discrimination in employment due to the plaintiff's gender and age. Specifically, the plaintiff was subjected to disparate treatment in the terms, conditions, privileges and the involuntary termination of her employment. The defendant also retaliated against the plaintiff when she complained to the defendant and the authorities about these discriminatory acts.

### JURISDICTION

2. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et. seq. This court has jurisdiction over this matter pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000(e), et. seq. and the D.C. Human Rights Act, D.C. Code §2-1402.11.

### VENUE

3. Venue is proper in this district pursuant to 42 U.S.C. §2000(e)(5)(f) and 28 U.S.C. §1391(b) & (c). Plaintiff's claims arose in and out of her employment with the District of Columbia

Government. Additionally, all relevant records pertaining to plaintiff's claims are in the District of Columbia where the defendant's principal place of business is located.

## PARTIES

4. Plaintiff was hired by the defendant as a teacher on or about October 1, 1970. She served in various capacities culminating in her final appointment in 1997 as a Senior High School Principal. She is currently 60 years old.

5. Defendant is a governmental entity that operates the D.C. Public Schools which serves to educate the children of the District of Columbia.

## FACTS

6. Beginning in 1998, Dr. Musgrove became aware that other male principals at other similarly situated high schools, who were hired or promoted at the same time as she, were being paid more than she was in the way of salary, bonuses and other financial incentives. The other principals also received financial resources to help improve conditions at their buildings that Dr. Musgrove didn't receive.

7. Dr. Musgrove brought this to the attention of Mr. Ralph Neal, then Assistant Superintendent to the DCPS Senior High School Division. When she asked Mr. Neal to provide the exact same resources and assistance that other male principals received, she was continually told to wait her turn. Finally she was told by Neal that she should accept the fact that the Superintendent had the discretion to give bonuses to whomever he wanted (even if they were all male).

8. From 1998 until her termination, Dr. Musgrove complained about the inequities and discrimination that she suffered with regards to not getting the pay and resources that she needed.

9. She complained to the head of DCPS Human Resources (HR), Mrs. Patricia Lattimore. Lattimore told her that she would look into it. When Mrs. Lattimore left her position, Dr. Musgrove complained to her replacement, Mrs. Aleta Alsop. She was told to put her formal complaint in writing which she did. Dr. Musgrove never received any response from anyone in HR.

10. In November 2001, Dr. Musgrove continually complained to DCPS administration about the fact that Anacostia High School was the only high school that did not have a stadium or a useable auditorium.

11. The administration's failure to rectify the situation was in retaliation for Dr. Musgrove's complaint regarding discrimination.

12. The Board of Elections wanted to use Anacostia as a polling place for the September 2002 elections. DCPS wanted to use the restricted area for elections but Dr. Musgrove informed them that they could not use the area, due to the asbestos danger present.

13. Within a matter of days, DCPS sent a team from the facilities division to erect a temporary wall so that a learning center could be used for the elections. Dr. Musgrove again, keeping her students in mind, complained to the administration that; 1) the area that they decided to use for elections would displace students during instructional time and 2) that while the speedy construction was appreciated, there was still asbestos in the building and that their efforts would have been better served on asbestos removal while relocating the polling place to another area school.

14. Dr. Steve Seleznow, then the Chief of Staff, responded to Dr. Musgrove's comments with a tirade in which he told Dr. Musgrove that she was divisive, bitter and angry. Within the culture of DCPS these comments would not have been made if Dr. Musgrove was a male principal.

15. In October 2002, Dr. Musgrove received a phone call from Associate Superintendent Vera White. Also on the call was DCPS Director of Communications Dr. Linda Boyd. Dr. Boyd chastised Dr. Musgrove for failing to return a phone call to Justin Blum, a reporter from the Washington Post who was doing a story on DCPS. During the phone call, Dr. Boyd became increasingly agitated, was screaming and yelling at Dr. Musgrove.

16. Within the culture of DCPS, the tone and manner of the phone call would have been entirely different had Dr. Musgrove been male.

17. In January 2003 when, during a meeting with other principals, Dr. Musgrove vocally expressed a difference of opinion with Associate Superintendent Dr. William Wilhoyte.

18. Less than a week later, Superintendent Vance visited the high school when he specifically knew that Dr. Musgrove would not be in the building. Vance made it known to those who he spoke with during the visit that he was displeased with the overall operation of the building and program.

19. The sudden visit was not the usual practice of the Superintendent; a move that would not have occurred had Dr. Musgrove been male.

20. Within days after his visit, Dr. Musgrove began receiving calls from DCPS information technology department and the academic services departments. She was told that the calls were related to what the Superintendent wanted to see done at Anacostia as a result of his visit.

21. If Dr. Musgrove had been male, she would have been asked to meet directly with Superintendent if he had concerns about the school.

22. Because the situation was so far outside of the normal protocol and procedure, Dr. Musgrove made several attempts to meet with Vance to discuss his visit. That meeting never occurred.

23. On February 24, 2003 there was a small fire in Anacostia High School. After the building was evacuated and the fire extinguished, Dr. Musgrove had her maintenance staff lock two doors near one of the computer labs because she did not want to risk any damage or equipment being stolen from the lab.

24. Because she locked the doors, the fire marshal issued Dr. Musgrove a citation for violating the fire code. The very next day she was placed on administrative leave for violating the Superintendent's directive regarding fire code violations.

25. The reason given for placing Dr. Musgrove on administrative leave was pretextual. Mr. Learie Phillip, then principal of Roosevelt High School was cited for the same alleged violation but was not placed on administrative leave.

26. On July 16, 2003, Dr. Musgrove received a phone call from Justin Blum, a reporter with the Washington Post. He wanted her reaction to being fired as principal of Anacostia. She informed him that she had no comment because she had not been informed from anyone at DCPS that she had been terminated. She asked him where he had received that information from. He told her that Wilhoyte had communicated it to him earlier that day.

27. On July 17, 2003, an article appeared in the Washington Post entitled "District Schools Fire Three High School Principals". According to the article, Dr. Musgrove was being replaced as the principal because the school suffered from poor test scores, bad student behavior and other failings. At the time the article was published, no one from DCPS had spoken with Dr. Musgrove.

28. On July 23, 2003, Tony Hinnant from DCPS Security hand delivered a termination letter dated for that day. The letter cited two (2) grounds for her termination. The letter claimed that Dr. Musgrove had violated DCMR §1401.2(n) "Discourteous treatment of the public

supervisor or other employees"; a claim that never would have been made had Dr. Musgrove been male.

29. Had Dr. Musgrove been male, these types of allegations made against her would never have been an issue. The letter also claimed that Dr. Musgrove had violated DCMR §1401.2(t) "Violation of the rules, regulations, or lawful orders of the Board of Education or any directive of the Superintendent of Schools, issued pursuant to the rules of the Board of Education." Obviously this claim was based on the events of February 24, 2003 surrounding the fire.

30. Dr. Musgrove, with the assistance of her union and pursuant to D.C. law and the collective bargaining agreement filed a grievance against the school regarding her termination.

31. From the summer of 2003 through the summer of 2004, the union and the school proceeded through their grievance process. The grievance covered only those claims upon which her termination was based; violations of §§1401.2(n) and 1401.2(t). The grievance did not cover any claims of discrimination.

32. From August 2003- October 2003, plaintiff attempted on numerous occasions to get her annual leave payout but was continually told by DCPS that she shouldn't worry about it because she was "old enough" to retire.

33. In June 2004, that grievance was settled via a settlement agreement entered into by Dr. Musgrove, then Union President Bernard Lucas and Loretta Blackwell, DCPS Director of Labor Management Employee relations.

34. Specifically, paragraph 6 of the settlement states, "Grievant hereby waives, releases and agrees not to pursue or file any action or complaint of any nature or kind in any forum regarding her termination that was the subject of this grievance."

35. On May 19, 2004 Dr. Musgrove filed a charge of discrimination against DCPS at OHR. Her complaint claimed retaliatory discharge, hostile work environment, violations of equal pay and denial of service. The claim was cross filed with the EEOC and was taken through mediation and investigation until July 2005 at which time a right to sue letter was issued by EEOC on 7 August 2006.

36. On or about 9 July 2004, Dr. Dr. Musgrove received a letter from DCPS informing her that she was being appointed as the Principal of Coolidge Senior High School and that she was to report for duty on 12 July 2004 and that her supervisor would be Juan Baughn, Assistant Superintendent.

37. As directed by the letter, Dr. Musgrove reported to Coolidge on 12 July 2004. No one else came that day to meet her, give her keys or welcome her to the school. She attempted to call her supervisor, Mr. Baughn but could not reach him. While she could reach other administrators at DCPS she could not reach her supervisor. Other people that she spoke to DCPS had no information regarding her appointment and had no information regarding Dr. Baughn being her supervisor.

38. She tried to no avail from 12 July to 14 July at which time she realized that the appointment was indeed a sham appointment; a promise of a job that DCPS had never intended her to have. In essence DCPS had breached their settlement agreement by promising her an appointment in order to get her to sign the agreement but had no intentions on delivering what they promised; the hostile work environment had still continued.

## COUNT I:
## VIOLATION OF THE EQUAL PAY ACT

39. The allegations in paragraphs 1-38 are incorporated herein by reference.

40. By failing to pay the plaintiff at the same rate of pay as her similarly situated male peers, the defendant violated the Equal Pay Act. Specifically, the defendant willfully engaged in these

violations and when it was brought to its attention, it failed to remedy the problem. The effects of this violation are ongoing as the level of pay and pay rate is used to calculate the plaintiff's benefits with regards to retirement.

## COUNT II:
## HOSTILE WORK ENVIRONMENT

41. The allegations in paragraphs 1-38 are incorporated herein by reference.

42. The defendant failed to provide the plaintiff with the same financial incentives and assistance necessary for her to manage her building due to her gender, treated her differently than her similarly situated male peers through threats, intimidation and misuse of its administrative power. By doing so, the defendant created a hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000(e), et. seq. as well as the D.C. Human Rights Act, D.C. Code §2-1402.11 (2005).

## COUNT III:
## AGE DISCRIMINATION

43. The allegations in paragraphs 1-37 are incorporated herein by reference.

44. By terminating the plaintiff's employment due to her age and gender, the defendant violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000(e), et. seq. as well as the D.C. Human Rights Act, D.C. Code §2-1402.11 (2005).

    **WHEREFORE**, plaintiff requests the following equitable and legal relief:

    a. That the Court issue a declaratory judgment holding that the defendant has discriminated against the plaintiff on the basis of gender by subjecting her to a hostile work environment;

    b. That the Court issue a declaratory judgment holding that the defendant has discriminated against plaintiff on the basis of age by subjecting her to a hostile work environment;

    c. That the Court issue a declaratory judgment holding that the defendant has violated the Equal Pay Act;

    d. That the Court order:

        1. The defendant to retroactively reinstate the plaintiff to her position as a principal effective to the date of her termination;

        2. That the defendant provide back pay with interest retroactive from the date of her termination to the date of the award;

        3. That the plaintiff's retirement benefits be adjusted to reflect all applicable pay increases and promotions due retroactive to the date of her termination;

    e. Compensatory and punitive damages to be determined by the jury;

    f. Reasonable attorney's fees and costs;

    g. Other such relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Respectfully Submitted,

_____/s/_____
E. Lindsey Maxwell II, Esq.
Attorney for the Plaintiff
The Intersect Law Group, PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 508-3890
(202) 331-3759 (f)

9 July 9, 2008

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the aforementioned notice in this action was served this 9th Day of July 2008 via electronic filing to the following address.

Kerslyn D. Featherstone
Assistant Attorney General
441 4th St., NW
6th Floor South
Washington, DC 20001

_____/s/_____
E. Lindsey Maxwell II, Esq.

EEOC Form 161 (3/98)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Mildred L. Musgrove**
c/o E. Lindsey Maxwell, Esq.
Perennial Law Group, LLP
1455 Pennsylvania Ave., NW, Suite 100
Washington, D.C. 20004

From: **Washington Field Office - 570**
1801 L Street, N.W.
Suite 100
Washington, DC 20507

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2004-00214 | David Gonzalez, State & Local Coordinator | (202) 419-0714 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other (briefly state)   **ADMINISTRATIVE CLOSURE**

- **NOTICE OF SUIT RIGHTS** -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of **this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R Hutter* (signature)

Dana Hutter,
Director

August 7, 2006
(Date Mailed)

Enclosure(s)

cc: **Ms. Valarie Jones**
D.C. Public Schools
825 North Capitol Street, N.E.
Washington, DC 20002