THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **MILDRED MUSGROVE,** ) | |
| ) | |
| **Plaintiff** ) | |
| **V.** ) | |
| ) | **Case No. 06-1861 (EGS)** |
| ) | **Judge Emmet Sullivan** |
| **THE GOVERNMENT  OF THE DISTRICT** ) | |
| **OF COLUMBIA** ) | **NEXT EVENT:** |
| ) | **Discovery Closes** |
| **Defendant** ) | **18 November 2008** |

---

## OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Plaintiff Mildred Musgrove, by and through her undersigned counsel hereby files this opposition to the motion to dismiss the second amended complaint filed by the defendant Government of the District of Columbia.  Specifically, the Plaintiff opposes the motion on the following grounds:

1. Plaintiff's claims were filed within the time limits set forth by both the DC Office of Human Rights ("OHR") and the Equal Employment Opportunity Commission ("EEOC").

2. As it relates to the defendants misguided attempts to apply the notice requirements of D.C. Code § 12-309:

   a. The Attorney General was notified of the possibility of suit via letter 20 September 2004 to DCPS;

3. Plaintiff's claims are not barred by any settlement agreement or any one-year statute of limitations.  The settlement agreement entered into by the plaintiff only covered the issues specifically outlined in the grievance filed on her behalf by her union.  Issues of discrimination were NOT covered in that agreement

4.   Punitive damages are indeed recoverable against the District of Columbia in Federal Court.

A Memorandum of Points and Authorities in support of this opposition to the defendant's motion is attached.

Respectfully Submitted,


_____/s/_____
E. Lindsey Maxwell II, Esq.
Attorney for the Plaintiff
The Intersect Law Group, PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 508-3890
(202) 331-3759 (f)


16 July 2008

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILDRED MUSGROVE,** | ) |
| | ) |
| **Plaintiff** | ) |
| **V.** | ) |
| | ) **Case No. 06-1861 (EGS)** |
| | ) **Judge Emmet Sullivan** |
| **THE GOVERNMENT OF THE DISTRICT** | ) |
| **OF COLUMBIA** | ) **NEXT EVENT:** |
| | ) **Discovery Closes** |
| **Defendant** | ) **18 November 2008** |
| | ) |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT</u>

### <u>Introduction</u>

Plaintiff, Dr. Mildred Musgrove was a proud product of the District of Columbia Public Schools (DCPS) system. Because of her desire to serve her community she remained in the District where she spent her entire professional career which began in 1970 as a teacher. She proceeded to hold progressively more responsible positions in DCPS from the span of 1970 through 1997 serving as Instructional Supervisor, Assistant Superintendent, Chief of Staff, and Interim Chief Academic Officer. In 1997, former Superintendent and Chief Academic Officer Arlene Ackerman appointed Dr. Musgrove to the position of principal of Anacostia, which was at the time nationally known for its notorious reputation for being one of the worst schools in the region.

Beginning in 1998, Dr. Musgrove became aware that other male principals at other similarly situated high schools, who were hired or promoted at the same time as she, were being paid more than she was in the way of salary, bonuses and other financial incentives. The other principals also received financial resources to help improve conditions at their buildings that Dr. Musgrove didn't

receive. Dr. Musgrove brought this to the attention of Mr. Ralph Neal, then Assistant Superintendent to the DCPS Senior High School Division. When she asked Mr. Neal to provide the exact same resources and assistance that other male principals received, she was continually told to wait her turn. Finally she was told by Neal that she should accept the fact that the Superintendent had the discretion to give bonuses to whomever he wanted (even if they were all male).

From 1998 until her termination, Dr. Musgrove complained about the inequities and discrimination that she suffered with regards to not getting the pay and resources that she needed. She complained to the head of DCPS Human Resources (HR), Mrs. Patricia Lattimore. Lattimore told her that she would look into it. Nothing happened. When Mrs. Lattimore left her position, Dr. Musgrove complained to her replacement, Mrs. Aleta Alsop. She was told to put her formal complaint in writing which she did. Dr. Musgrove never received any response from anyone in HR. No one from DCPS ever responded to her complaints of discrimination based on her gender. To compound matters, not only did DCPS fail to respond to her complaint, but the agency also retaliated against Dr. Musgrove by creating a constant and increasingly hostile work environment.

In November 2001, Dr. Musgrove continually complained to DCPS administration about the fact that Anacostia High School was the only high school that did not have a stadium or a useable auditorium.[1] The administration's failure to rectify the situation was in retaliation for Dr. Musgrove's complaint regarding discrimination. In essence they were sending her a message. This fact was proven the following year when the Board of Elections wanted to use Anacostia as a polling place for the September 2002 elections. DCPS wanted to use the restricted area for elections but Dr. Musgrove informed them that they could not use the area, due to the danger present. Within a

---

[1] While Anacostia High School had an auditorium, it had been sealed off in November 2001 when tests revealed that there was asbestos present. From the time that the area had been first been sealed, Dr. Musgrove made efforts to have the situation corrected to protect the health of the students. She also raised the issue continually in monthly Senior High School Division meetings but her complaints were constantly ignored.

matter of days, DCPS sent a team from the facilities division to erect a temporary wall so that a learning center could be used for the elections. Dr. Musgrove again, keeping her students in mind, complained to the administration that; 1) the area that they decided to use for elections would displace students during instructional time and 2) that while the speedy construction was appreciated, there was still asbestos in the building and that their efforts would have been better served on asbestos removal while relocating the polling place to another area school. Dr. Steve Seleznow, then the Chief of Staff, responded to Dr. Musgrove's comments with a tirade in which he told Dr. Musgrove that she was divisive, bitter and angry. Within the culture of DCPS these comments would not have been made if Dr. Musgrove was a male principal.

In October 2002, Dr. Musgrove received a phone call from Associate Superintendent Vera White. Also on the call was DCPS Director of Communications Dr. Linda Boyd. Dr. Boyd chastised Dr. Musgrove for failing to return a phone call to Justin Blum, a reporter from the Washington Post who was doing a story on DCPS. During the phone call, Dr. Boyd became increasingly agitated, was screaming and yelling at Dr. Musgrove. Again, within the culture of DCPS, the tone and manner of the phone call would have been entirely different had Dr. Musgrove been male.

The final straw came in January 2003 when, during a meeting with other principals, Dr. Musgrove vocally expressed a difference of opinion with Associate Superintendent Dr. William Wilhoyte. While Dr. Musgrove thought nothing of the disagreement because it was a professional difference expressed in a professional atmosphere, other principals warned her to be careful because Wilhoyte and then Superintendent Paul Vance were good friends. The other principals were apparently right. Less than a week later, Superintendent Vance visited the high school when he specifically knew that Dr. Musgrove would not be in the building. Vance made it known to those

who he spoke with during the visit that he was displeased with the overall operation of the building and program. Again, the sudden visit was not the usual practice of the Superintendent; a move that would not have occurred had Dr. Musgrove been male.

Within days after his visit, Dr. Musgrove began receiving calls from DCPS information technology department and the academic services departments. She was told that the calls were related to what the Superintendent wanted to see done at Anacostia as a result of his visit. Again, this was not how these situations were normally handled. If Dr. Musgrove had been male, she would have been asked to meet directly with Superintendent if he had concerns about the school. Because now the situation was so far outside of the normal protocol and procedure, Dr. Musgrove made several attempts to meet with Vance to discuss his visit. That meeting never occurred.[2]

On February 24, 2003 there was a small fire in Anacostia High School. After the building was evacuated and the fire extinguished, Dr. Musgrove had her maintenance staff lock two doors near one of the computer labs because she did not want to risk any damage or equipment being stolen from the lab. Because she locked the doors, the fire marshal issued Dr. Musgrove a citation for violating the fire code.[3] The very next day she was placed on administrative leave for violating the Superintendent's directive regarding fire code violations. The reason given for placing Dr. Musgrove on administrative leave was pretextual. Mr. Learie Phillip, then principal of Roosevelt High School was cited for the same alleged violation but was not placed on administrative leave.

---

[2] Dr. Musgrove did receive an appointment to meet with Superintendent Vance on March 3, 2003 at 7:30 a.m. However, when she arrived, she was told that by Cheryl Vinson, the Superintendent's assistant, that she was not on the schedule. Ms. Vinson made a few phone calls and told Dr. Musgrove that the meeting had been inexplicably cancelled and that someone was supposed to have notified her.

[3] The hearing officer noted in his written decision that "…Respondent has demonstrated that there are mitigating and /or extenuating circumstances that warrant the reduction of the fines in that the Respondent abated the violations on the day of the infraction by unlocking the doors before the students were allowed back into that area of the building…" DCRA v. Musgrove, 03-OAD-2093F (2003).

On July 16, 2003, Dr. Musgrove received a phone call from Justin Blum, a reporter with the Washington Post. He wanted her reaction to being fired as principal of Anacostia. She informed him that she had no comment because she had not been informed from anyone at DCPS that she had been terminated. She asked him where he had received that information from. He told her that Wilhoyte had communicated it to him earlier that day. On July 17, 2003, an article appeared in the Washington Post entitled "District Schools Fire Three High School Principals". According to the article, Dr. Musgrove was being replaced as the principal because the school suffered from poor test scores, bad student behavior and other failings. At the time the article was published, no one from DCPS had spoken with Dr. Musgrove. On July 23, 2003, Tony Hinnant from DCPS Security hand delivered a termination dated for that day.[4] Appendix 1. The letter cited two (2) grounds for her termination. The letter claimed that Dr. Musgrove had violated DCMR §1401.2(n) "Discourteous treatment of the public supervisor or other employees"; a claim that never would have been made had Dr. Musgrove been male. Again, had Dr. Musgrove been male, these types of allegations made against her would never have been an issue. The letter also claimed that Dr. Musgrove had violated DCMR §1401.2(t) "Violation of the rules, regulations, or lawful orders of the Board of Education or any directive of the Superintendent of Schools, issued pursuant to the rules of the Board of Education." Obviously this claim was based on the events of February 24, 2003 surrounding the fire.

Dr. Musgrove, with the assistance of her union and pursuant to D.C. law and the collective bargaining agreement filed a grievance against the school regarding her termination. From the summer of 2003 through the summer of 2004, the union and the school proceeded through their

---

[4] Obviously Mr. Blum from the Washington Post was right about Dr. Musgrove being terminated. He could only have found out about it from Dr. Wilhoyte or someone else at DCPS before he actually terminated her. This was a private personnel matter between DCPS and Dr. Musgrove. Divulging portions of a personnel file and private personnel matters is a violation of DCPS personnel regulations and gives rise to conduct that is reckless and egregious. This conduct alone gives rise to the need for punitive damages.

grievance process.   The grievance covered only those claims upon which her termination was based;

violations of §§1401.2(n) and 1401.2(t).  The grievance did not cover any claims of discrimination.

In June 2004, that grievance was settled via a settlement agreement entered into by Dr. Musgrove,

then Union President Bernard Lucas and Loretta Blackwell, DCPS Director of Labor Management

Employee relations.  Appendix 2.  Specifically, paragraph 6 of the settlement states, "Grievant

hereby waives, releases and agrees not to pursue or file any action or complaint of any nature or kind

in any forum **regarding her termination that was the subject of this grievance.**" (emphasis

added)

On May 19, 2004 Dr. Musgrove filed a charge of discrimination against DCPS at OHR.  Her

complaint claimed retaliatory discharge, hostile work environment, violations of equal pay and denial

of service.  The claim was cross filed with the EEOC and was taken through mediation and

investigation until July 2005 at which time a right to sue letter was issued by EEOC on 7 August

2006.[5]  Appendix 10.

---

[5] The plaintiff must pause here to mention, at length, the unconscionable process that she underwent at the D.C. Office of Human Rights because this may be her only opportunity to do so and she feels it important to make the Federal Courts aware of this broken system.  This case was filed in May of 2004.  It was initially dismissed administratively because OHR only read a portion of the documents and thought that she was an employee of the D.C. Fire Department; a mistake that her attorney promptly corrected by letter to OHR Director Kenneth Saunders. After initial attempts at settlement through mediation, the case sat for almost a year with absolutely no action taken despite the plaintiff's letters and calls to move the process along.  The case went through the hands of at least four (4) different people at OHR all of who hold the title of "specialists" and therefore deserve "special" mention here (Haydn Demas, Bobbie James-Hoye, Georgia Stewart, & Dianne Betz).  In 2005, Mr. Saunders sent a letter to plaintiff's counsel informing him that OHR was administratively closing the case because they learned of the settlement agreement negotiated by the union.  Appendix 8.  When plaintiff's counsel asked Mr. Saunders why he was raising a substantive defense on behalf of DCPS he admitted via phone that it should never have been done.  OHR is charged with investigating cases; not litigating them.  Furthermore, it is not their responsibility to advocate on behalf of other District agencies as it did in this case.  OHR is charged with investigation and reporting; not making substantive decisions of law.
When this case was referred to the EEOC the process did not get any better.  On July 21, 2005 plaintiff's counsel received a right to sue letter from Mr. Gonzalez.  The letter was for Simone Greggs who worked at the Hard Rock Café in D.C.  Appendix 5.  It is this incorrect letter that the defendant relies on to base most of its argument in its motion to dismiss regarding statute of limitations and time frame issues.  Def. Motion to Dismiss Exhibit 9.  Again, after a year of writing letters back and for the with OHR to no avail, plaintiff's counsel had to contact the EEOC to request the proper right to sue letter that he finally received almost a month later.  There is no doubt that many

On or about 9 July 2004, Dr. Dr. Musgrove received a letter from DCPS informing her that she was being appointed as the Principal of Coolidge Senior High School and that she was to report for duty on 12 July 2004 and that her supervisor would be Juan Baughn, Assistant Superintendent. Appendix 11.  As directed by the letter, Dr. Musgrove reported to Coolidge on 12 July 2004.  No one else came that day to meet her, give her keys or welcome her to the school.  She attempted to call her supervisor, Mr. Baughn but could not reach him.  While she could reach other administrators at DCPS she could not reach her supervisor.  Other people that she spoke to DCPS had no information regarding her appointment and had no information regarding Dr. Baughn being her supervisor.  She tried to no avail from 12 July to 14 July at which time she realized that the appointment was indeed a sham appointment; a promise of a job that DCPS had never intended her to have.  In essence DCPS had breached their settlement agreement by promising her an appointment in order to get her to sign the agreement but had no intentions on delivering what they promised; the hostile work environment had still continued.[6]

**Standard of Reviews**

*Standard of Review on Motion to Dismiss*

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true.  See e.g. Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999).  The complaint should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. See Schuler v. United States, 617 F.2d at 608 (quoting

cases like this one go through the same system that is wrought with this pitiful level antipathy, laziness and unprofessionalism.  It is our sincerest hope that this Court will in some way recognize the failures of the agencies involved in this case so that the system can work better for other litigants in the future.

[6] It was at this time that Dr. Musgrove began to experience physical discomfort which she knew was caused by stress.  After a consultation that day with her doctor she decided not to return to Coolidge.

Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  To that end, the complaint is construed liberally in the plaintiffs' favor, and the court should allow the plaintiffs the benefit of all inferences that can be derived from the facts alleged.  Id.  617 F.2d at 608.

The defendant's motion to dismiss claims that the decision in Bell Atlantic v. Twombly, 127 S. Ct. 1955 (2007) completely disavows Conley v. Gibson.  This is absolutely ridiculous.  Nothing in the Twombly decision comes close to overturning or "disavowing" Conley.  As a matter of fact, the Court in Twombly specifically and liberally looks to Schuer v. Rhodes, 416 U.S. 232, 236 (1974) and states that a well pled complaint may proceed even if it appears "that a recovery is very remote and unlikely."   Furthermore, in application, the Twombly case dealt with a very narrow issue; the pleadings as it applied to a claim made under § 1 of the Sherman Act.  Such is not the case here. Therefore, the traditional standards set forth in Conley still apply here as they have over the past 50 years.  In other words, the complaint should not be dismissed unless the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  See Conley at 45-46.

*Standard of Review on Motion for Summary Judgment*

Summary Judgment may be granted for a moving party when it shows that there are no material facts in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hussain v. Principi, 344 F. Supp. 2d 86,94 (D.D.C. 2004).  "Often the introduction of factual materials by the parties – including depositions, answers to interrogatories, admissions on file and affidavits – will convert a Rule 12 (b)(6) motion to

dismiss to a Rule 56(b) motion for summary judgment." <u>Herron v. Veneman</u>, 305 F. Supp. 2d 64, 70 (D.D.C. 2004).[7]

*Summary Judgment is Inappropriate and Premature*

The defendant's motion for summary judgment should be denied. The issue at hand is whether or not the defendant, the moving party, has shown that there are no material facts in dispute and that it is entitled to judgment as a matter of law. A close reading of this opposition will reveal that there are too many factual elements of this case that are in dispute. Discovery has not been initiated as of yet so there are none of the usual factual materials that either party can use at this time to support a motion for summary judgment. There are many places in the defendant's motion that are factually inaccurate and even contradict itself in many of the arguments. This is because the factual materials needed to prove or disprove the elements of the claims have not been discovered by either party yet. While there are many of these elements that are set forth in the following opposition arguments, a list of those elements that are not in dispute are attached in a formal statement of material facts that are not in dispute. For the reasons set forth above and for the reasons set forth throughout this motion, the plaintiff respectfully requests that the defendant's motion for summary judgment be denied in its entirety.

Furthermore, this court and her sister circuits have long held that because discrimination in employment is a claim upon which relief can be granted, the complaint only has to state that the plaintiff suffered an adverse action because of her protected class to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See <u>Potts v. Howard Univ. Hospital</u>, D.C. Cir. 2007, Slip Opinion

---

[7] It is important to note that discovery just began and to date, no requests for interrogatories have taken place, no depositions have been taken and no requests for production have been exchanged. Therefore, any notion that this motion to dismiss can be converted into a motion for summary judgment is extremely premature.

07-7015 (remanding claims for sex discrimination, retaliation and wrongful termination where summary judgment was incorrectly entered) . See also, Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000).

## ARGUMENT

## I.    PLAINTIFF FILED A TIMELY CHARGE OF DISCRIMINATION WITH THE OHR AND THE EEOC

Plaintiff alleges in her complaint that defendant violated her rights under the Equal Pay Act under Title VII of the Civil Rights Act by failing to pay her at the same level and by failing to provide her with the same financial support as her male counterparts.  Also, as stated above, when the inequities were brought to the attention of the administration, DCPS failed to remedy the situation.  In addition, the plaintiff also claims that the defendant created a hostile work environment in retaliation for her making her other claims under Title VII.

The defendant's motion to dismiss claims that the plaintiff failed to file her claim with the OHR or the EEOC within the proper timeframe allowed under law.  To bolster their argument, the defendant states that the plaintiff has only 300 days within which to file her complaint with the agency.  The defendant then walks the court down a road in an attempt to put all of the plaintiff's claims in a box and dismiss them because, according to the defendant, the claims fall outside of the 300 day window.  Their argument is ridiculous and convoluted.

The Plaintiff filed her claim with the OHR on May 19, 2004.  She was terminated on July 16, 2003.  Appendix 1.  The defendant's own motion states that "…the only allegations that would fall within the statutory filing period would be those discriminatory acts that occurred on or after July

12

12, 2003." (*Defendants motion to dismiss at 10*).  Therefore, by operation of simple logic, math and a 2003-2004 calendar, it is clear that her claims regarding her termination cannot be time barred.

Defendant goes on to state that the plaintiff's claims regarding violations of the Equal Pay Act should be dismissed because the plaintiff failed to make these claims at the OHR.  Plaintiff is almost at a loss for words as to why the defendant would attempt to mislead this court.  On the face of the complaint form that was filed with OHR, the plaintiff states clearly, "…Respondent subjected me to disparate treatment when I was not compensated as my similarly situated male senior high school principals."  Appendix 12.  Again, by simply reading the defendants own exhibits and applying common sense, the plaintiff's claims under the Equal Pay Act were indeed reported to OHR and are therefore, rightfully before this court.

Defendant also argues that the Plaintiff's claims for hostile work environment should also be time barred because the alleged hostile work environment only occurred between Spring and Fall 2002.  The defendant fails to recognize the other obvious signs of the hostile work environment that occurred after 2002 which are squarely in the complaint.  The complaint speaks about the plaintiff being put on administrative leave without pay and that she was terminated during that same year.  The harassment was ongoing between the time that the plaintiff was appointed as a principal until the time she was later terminated.  Therefore, these claims should not be dismissed.

## II.     WHILE D.C. CODE §12-309 DOES NOT APPLY IN THIS CASE, PLAINTIFF DID INDEED SATISFY ITS REQUIREMENTS.

Defendant argues that the plaintiff cannot state a claim against the District for the allegations in her complaint because she did not file notice requirements that are required under D.C. Code §12-309.  Without restating this section of the code in painstaking detail, it states that any person who suffers unliquidated damages to person or property cannot bring an action against the District

13

government unless notice has been delivered to the Mayor in writing within six (6) moths of the injury.  The defendant believes that the court in <u>District of Columbia v. Dunmore</u> has made this a strict, absolute and unqualified requirement.  See 662 A.2d 1356, 1359 (D.C. 1995).

As a purely logical matter, plaintiff argues that, while there appears to be no authority on this issue, she could not have possibly known within six (6) months after her termination that she would inevitably file suit against the D.C. government.  She had a statutory right under both D.C. and Federal law to file her claim with the OHR and EEOC.  That process could have ended in a settlement or it could have ended in court but regardless of where it ended, she could not have known that she would have unliquidated damages especially since, in this case, her damages were and still are continual and perpetual.  Therefore, as a matter of pure logic, §12-309 should not apply here.

In addition, the Court in <u>Byrd v. District of Columbia</u> stated that §12-309 applies only to claims for unliquidated damages but to the extent that a plaintiff seeks to recover equitable relief, §12-309 does not apply.  *See 538 F. Supp. 2d 170 (D.D.C. 2008).*[8]  In the case at hand, the plaintiff seeks both equitable and unliquidated damages.  As such, the remedies sought in equity cannot be dismissed as a matter of law under the purview of this statue.

The Court in <u>Mazloum v. District of Columbia Metro. Police Dept.</u> stated that, "[b]ecause D.C. Code §12-309 (2001) is in derogation of the common law, it is to be strictly construed.  Nevertheless, the content requirements of the notice given to the District of Columbia—apart from the act of notice itself—are to be construed liberally, and in close cases courts are to resolve doubts in favor of finding compliance with the statute."  *See 522 F. Supp. 2d 24 (D.D.C. 2007).*  In addition, in distinguishing the cases cited by the defendant's motion, one can clearly see that those cases

---

[8] Defendant's motion to dismiss incorrectly cites this case as 538 F. Supp. 170 (D.D.C.). (*Defendants' motion at 13*).

involved the OHR statute but also involved some sort of tort action as well. None of those cases were purely statutory claims as we have here.

Applying the test liberally, there is no doubt that notice was made to the District when this claim had occurred. On September 20, 2004, counsel for Dr. Musgrove directed a letter to Valarie Jones, an attorney with DCPS stating that the plaintiff was ready to take this matter to trial and also stated the grounds upon which the case were founded. Appendix 3. On September 21, 2004, Ms. Jones replied with a letter stating that plaintiff counsel's letter was being forwarded to the D.C. Attorney General for review. Appendix 4. Again, the damages in this claim are ongoing; therefore, notice was made to the defendant of the possibility of this claim being litigated in court in a timely fashion.[9]

## III.    PLAINTIFFS CLAIMS ARE NOT BARRED BY ANY ONE YEAR STATUTE OF LIMITATIONS OR THE SETTLEMENT AGREEMENT ENTERED INTO WITH DCPS

A.  Plaintiff's claims of discrimination are not barred by the one-year statute of limitations.

Defendant argues that the plaintiff's claims are barred by the one-year statute of limitations set forth in the D.C. Code for these types of cases. The issue before the court is whether or not the plaintiff's claims were properly filed within such limits.

According to the defendant, D.C. Code §2-1403.16 provides that a cause of action must be filed within one-year of the unlawful discriminatory act, or the discovery thereof. Defendant goes on to

---

[9] In addition, on or about march 3, 2004, Dr. Musgrove made out a pre-complaint questionnaire and filed it with DCPS; a requirement set forth by OHR when a DC employee wishes to make these types of claims. In this questionnaire, all of the grounds for the subsequent OHR complaint were made out in detail to the DC government. For the defendant to now claim that it did not have notice of these claims when they occurred is preposterous.

state that the filing of a complaint with the OHR tolls the running of the statute of limitations while the complaint is pending. Plaintiff does not take issue with the authority cited.

Analyzing the authority to the facts of this case, it is easy to see that the plaintiff's claims are within the statute of limitation. Plaintiff's claims of discrimination are continuing violations. The initial discriminatory discharge occurred on July 16, 2003. She filed her claim with the OHR on May 19, 2004. As already discussed earlier, this claim was properly filed with the agency and hence tolled the statute of limitations. As such, her right to sue letter issued by the EEOC on August 7, 2006 stated that she had 90 days within which to file suit. Appendix 10. The plaintiff filed suit November 1, 2006 which was within the 90 day window given to her by the EEOC.

Defendant's argument that the one-year statute of limitations began to toll on July 21, 2005 is quite simply mistaken. As referenced in footnote 4 of this opposition, EEOC mistakenly and improperly issued a right to sue letter addressed to Dr. Musgrove when it was actually meant for another complainant. Plaintiff's counsel attempted on numerous occasions to rectify this matter with both OHR and EEOC. Appendices 5-9. A proper right to sue letter was finally issued on August 7, 2006 when Mr. Gonzalez finally reopened the case to issue the right to sue letter and then closed it administratively. Appendix 10. Defendant's motion to dismiss exhibit 9 is quite simply a mistaken correspondence and should not have been used in its motion. Furthermore, it is only one page of a two-page correspondence. Had the defendant investigated further or even attached the second page, it would have clearly seen that the attached right to sue letter was NOT addressed to Dr. Musgrove.

It is for the aforementioned reasons that the plaintiff's claims are not barred by the statute of limitations.

B.  Plaintiff's claims are not barred by the settlement agreement entered into by the plaintiff and
    DCPS.

Defendant argues in its motion to dismiss that the settlement agreement entered into between
DCPS and the plaintiff precludes her from making claims regarding discrimination in this forum.
The issue here is whether or not that agreement covers claims of discrimination.

A simple reading of the agreement in question reveals that the agreement allowed for Dr.
Musgrove to be reinstated with back pay for the time that she was actually terminated.   The
agreement was executed by Dr. Musgrove, the Union and DCPS.  All parties involved were well
aware that Dr. Musgrove had a charge pending at the OHR.  Paragraph 6 of the agreement clearly
states that the Grievant hereby waives, releases and agrees not to pursue or file any action or
complaint of any nature or kind in any forum regarding her termination **that was the subject of
this grievance**.  (emphasis added).  Appendix 2.  The subject of the grievance was the termination
letter that she received from DCPS stating that the reason she was being terminated was the
violations of two specific sections of the DC Code, specifically §§ 1401.  The subject of her
grievance was NOT any types of discrimination.  The defendant's arguments here can be dismissed
simply by stating that if the defendant wanted to preclude the plaintiff from litigating any and all
subjects or reasons for her termination then that would have been stated in the agreement itself.
Secondly, if that is what the parties were agreeing to then the phrase, "…that was the subject of this
grievance" would NOT have been added to that paragraph of the agreement.  Finally, OHR is the
ONLY forum that has jurisdiction over claims of discrimination.  A member of a union or labor
organization cannot, by operation of its collective bargaining agreement, pass this jurisdiction over
to a neutral third party such as an arbitrator.

It is also worth mentioning that DCPS breached this agreement when it failed to properly place Dr. Musgrove back to work.  As stated in the facts, she was reappointed to Coolidge High School by the letter she received, however, no one ever showed up to actually get her started to work.  Her supervisor never allowed her to begin work at Coolidge.  Therefore, DCPS breached the agreement.

For the reasons stated above, the plaintiff's claims are not barred by the settlement agreement.

## IV.    PUNITIVE DAMAGES ARE RECOVERABLE AGAINST THE DISTRICT OF COLUMBIA.

The defendant argues that punitive damages are not recoverable against the District of Columbia unless there is an extraordinary set of circumstances.  The issue here becomes whether or not extraordinary circumstances exist here to warrant such damages.

While all of the facts have not yet been revealed in this case, it is clear that the facts of this case are indeed extraordinary.  The complete lack and utter waste of time spent with the D.C. government both at the OHR and with DCPS, the disclosure of personnel information to the Washington Post and the culture of sexual discrimination between male and female high school principals make the case extraordinary.

It is for these reasons that the claim for punitive damages be allowed to stand.  However, in the alternative, the plaintiff respectfully requests that judgment on this portion of the defendant's motion to dismiss be withheld until after discovery has been completed and a true agreement as to the undisputed facts is actually ascertained.

**<u>CONCLUSION</u>**

Wherefore, based on the foregoing arguments, Defendant's motion to dismiss the Plaintiff's

amended complaint should be denied and summary judgment as well should be denied as there has

not yet been discovery and there are too many disputed facts.

Respectfully Submitted,


_____/s/_____
E. Lindsey Maxwell II, Esq.
Attorney for the Plaintiff
The Intersect Law Group, PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 508-3890
(202) 331-3759 (f)


16 July 2008

THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

MILDRED MUSGROVE,           )
                                       )
        Plaintiff         )
V.                            )
                                       )    Case No. 06-1861 (EGS)
                                     )    Judge Emmet Sullivan
THE GOVERNMENT OF THE DISTRICT )
OF COLUMBIA               )    NEXT EVENT:
                                     )    Discovery Closes
        Defendant      )    18 November 2008

---

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff was employed as the principal of Anacostia High School with DCPS since December 17, 1997. See Amended Complaint at 2, ¶ 6.

2. On February 25, 2003, plaintiff was placed on administrative leave. Id. 3, ¶12.

3. On July 23, 2003, plaintiff was terminated from her position as Principal of Anacostia High School, effective August 6, 2003. Appendix 1.

4. On or about December 12, 2003, plaintiff requested arbitration regarding the substantive reasons for her termination.

5. On May 14, 2004, plaintiff filed a charge of discrimination with DCOHR. Appendix 12.

6. On or about May 25, 2004, plaintiff entered into a settlement agreement with DCPS regarding the grievance that she filed regarding her termination. Appendix 2.

7. On June 25, 2004, plaintiff was reinstated as principal with DCPS. Appendix 11.

8. On May 24, 2005, DCOHR administratively dismissed plaintiff's complaint incorrectly based on the settlement agreement reached on May 25, 2004.

9.  On August 6, 2006, EEOC reopened the case and issued a right to sue letter.  Appendix 10.

Respectfully Submitted,


_____/s/_____
E. Lindsey Maxwell II, Esq.
Attorney for the Plaintiff
The Intersect Law Group, PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 508-3890
(202) 331-3759 (f)

16 July 2008

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILDRED MUSGROVE,** ) | |
| ) | |
| **Plaintiff** ) | |
| **V.** ) | |
| ) | **Case No. 06-1861 (EGS)** |
| ) | **Judge Emmet Sullivan** |
| **THE GOVERNMENT  OF THE DISTRICT** ) | |
| **OF COLUMBIA** ) | **NEXT EVENT:** |
| ) | **Discovery Closes** |
| **Defendant** ) | **18 November 2008** |
| ) | |

## ORDER

Upon consideration of Defendant District of Columbia's Motion to Dismiss, or, in the

Alternative for Summary Judgment, and the Opposition filed by plaintiff, and the entire record

herein, it

is by this _____ day of _____ 2008, **ORDERED** that Defendant's Motion to

Dismiss is **DENIED**; and it is **FURTHER ORDERED** that the Defendant's Motion for

Summary Judgment is **DENIED**.

**SO ORDERED.**

_____
The Honorable Emmet G. Sullivan
Judge, U.S. District Court for the District of Columbia

Copies to:
Kerslyn D. Featherstone, Esq.
441 4th Street, NW, Suite 600-S
Washington, DC 20001

E. Lindsey Maxwell II, Esq.
The Intersect Law Group, PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006

## **CERTIFICATION OF SERVICE**

I hereby certify that a true and correct copy of the aforementioned OPPOSITION TO THE MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT was served this 16th Day of July 2008 via electronic filing.

Kerslyn D. Featherstone
Assistant Attorney General
441 4th St., NW
6th Floor South
Washington, DC 20001

_____/s/_____
E. Lindsey Maxwell II, Esq.



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

COPY CHRON

*Office of Human Resources*
825 North Capitol Street, N.E.
Sixth Floor
Washington, D.C. 20002-4232
(202) 442-4080 Fax: (202) 442-5315
www.k12.dc.us

HAND DELIVERED

July 23, 2003

Mildred Musgrove
1010 Taylor Street, N.E.
Washington D.C. 20017

<div style="margin-left:2em">

Re:    Notice of Termination
       Principal
       Anacostia Senior High School

</div>

Dear Ms. Musgrove:

Pursuant to the District of Columbia Municipal Regulations (DCMR), Title 5, Chapter 14, as well as pertinent provisions of the negotiated Agreement between the Board of Education and the Council of School Officers (CSO), I am writing to notify you that you will be terminated from your position as a principal for the District of Columbia Public Schools (DCPS) effective August 6, 2003.   Kindly be advised that you will be placed on administrative leave with pay from July 23, 2003 until the effective date of your termination. You are not to be in or on the grounds of Anacostia Senior High School or be on the District of Columbia Public Schools property during this period of administrative leave, unless cleared by the Office of Labor Management and Employee Relations (LMER).

You are being dismissed on these grounds:

Grounds 1:    DCMR § 1401.2 (n) "Discourteous treatment of the public supervisor, or other employees."

Reasons 1:    On March 31, 2003, the Division of Security issued an investigative report which found that the allegation of harassment was unsubstantiated based on the legal definition, however, after further review it was determined that you intimidated and retaliated against teachers who had spoken with the Superintendent during his January 30, 2003 visit to the school.

On January 31, 2003, the Superintendent visited Anacostia Senior High School.  During his visit, some teachers spoke with him.  On February 6, 2003, you called an emergency staff meeting to discuss the Superintendent's visit.  During the meeting, you told the staff that they should not speak with anyone from downtown about school related problems, and that you knew staff members talked to him during his visit.  You stated that you would whip

Notice of Termination
Re: Mildred Musgrove
Page 2

those people down to the ground. You further told the staff that you would be meeting individually with the three staff members who had spoken with the Superintendent. The staff members who had spoken with the Superintendent indicated that you were attempting to threaten and intimidate them. Other staff members indicated that they did not feel intimidated by the meeting, however, some were confused about the meeting and what you were talking about. Another staff member indicated that you were unhappy about the situation and that there was tension in the meeting. You met individually with the three staff members. They indicated that you met with them to find out what they had told the Superintendent. One staff member described the meeting as hostile and confrontational. Another stated that you made threats and attempted to intimate them.

Your behavior as reported in the investigative report is totally unacceptable as an employee of DCPS. Our staff expects and deserves a large degree of protection, safety and sensitivity from the principal and other adults in our schools. Your actions reflected poor professional judgment. Employees have a right to speak with the Superintendent without fear of reprisal, intimidation or retaliation.

Grounds 2:    DCMR § 1401.2 (t) "Violation of the rules, regulations, or lawful orders of the Board of Education or any directive of the Superintendent of Schools, issued pursuant to the rules of the Board of Education."

Superintendent's Directive 661.10, Locking of School Exit Doors - Prohibited and Superintendent's Directive 661.14, D.C. First Department, Fire Prevention Code Responsibility of All School Principals.

Reasons 2:    On April 15, 2003, the Division of Security issued an investigative report which found that you ordered two exit doors be padlocked while the school was occupied by students and staff. Your order put the students and staff in extreme danger and could have resulted in the loss of life and injuries during a fire at the school.

The investigative report revealed that on February 24, 2003, an MVM Security Officer smelled smoke. The fire alarms were activated. The Metropolitan Fire Department responded and discovered a fire inside the girls' locker room located in the gymnasium. Students and staff were evacuated from the building.

You radioed the Head Custodian, and asked him to begin locking any doors that the firemen were not using. The Fire Investigator met with you, and issued you a Notice of Fire Code Infraction which stated that you were in violation of D.C. Fire Regulation 3235.1(d) and issued a fine of $2,000.00 for

Notice of Termination
Re: Mildred Musgrove
Page 3

having two exit doors pad locked during a time that the school was occupied by students and staff. The investigative report also revealed that you admitted that you told the Head Custodian to lock the doors. Specifically, you stated, "I radioed Mr. Benjamin and asked him to begin locking any doors that the firemen were not using."

Superintendent's Directive 661.10 states that, "It shall be unlawful or any person to have any exit door in any public building locked in such manner as would necessitate a key to unlock from the inside or requires more than thirty (30) seconds to unlock, while the area or floor served by such door is occupied . . ." and that compliance is required. Superintendent Directive 661.14, further states that "It shall be the responsibility of school principals to coordinate and ensure that all fire code compliance activities within their respective school buildings are monitored on a daily basis," and that "principals are to ensure that: Doors designated as fire exit doors remain unlocked during times of occupancy by students and staff, and free of any locks which may prevent quick evacuation . . ." and that compliance with this directive is mandatory. Your conduct was clearly in violation of this directive.

In your position as the principal, you are ultimately responsible for the safety and welfare of the students and staff at your school. You are expected to be a leader and follow the rules and regulations which govern all employees of DCPS.

Your actions exposed DCPS to potential legal action, and adversely affects our ability to maintain the confidence of students and staff in providing a safe environment for them. You displayed extremely poor professional judgment on your part, and as a result, your actions had an adverse impact on the students and the image of our school district.

Within five (5) school days of your receipt of this notice, you have the right to review any documents supportive of the charges, to reply in writing or in person to all charges and to furnish any statements or documents in support of your reply. Your request to review the documents, to reply in person or to submit a written reply and statements supporting your reply must be directed to Loretta Blackwell, Director, Labor Management and Employee Relations (LMER), 825 North Capitol Street, N.E., Sixth Floor, Washington, D.C. 20002; telephone (202) 442-5373.

Your termination will be effective as stated above unless upon consideration of all relevant facts, the action is to be modified; at which time you and CSO will be so notified in writing. If you do not receive such communication, this will serve as your final notice of termination.

You have the right to file a grievance concerning this action in accordance with Article VIII, Grievance and Arbitration, of the Agreement between the Board of Education and the CSO.

Notice of Termination
Re: Mildred Musgrove
Page 4


The grievance must be filed within ten (10) working days after receipt of the notice of termination. Your grievance must be addressed to the appropriate DCPS official with a copy to LMER at the above address.

Sincerely,

Dr. William Wilhoyte
Assistant Superintendent

cc:   Dr. Karen R. Jackson, Chief – Human Resources
Dr. Elfreda Massie, Chief of Staff
Valarie Sheppard, HR
Aileen Baker, HR
Joyce Smith, Division of Finance
Theodore Tuckson, Division of Security
Frank Bolden, Council of School Officers
Official Personnel File
Labor Management Employee Relations

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is entered into by and between the DISTRICT OF COLUMBIA PUBLIC SCHOOLS ("DCPS"), the COUNCIL OF SCHOOL OFFICERS ("CSO"), and MILDRED MUSGROVE ("Grievant"), collectively ("Parties"), in settlement of the issues regarding her termination of employment with DCPS.

WHEREAS, Grievant, former principal at Anacostia Senior High School, received a July 23, 2003 notice of termination, effective August 6, 2003, for "discourteous treatment of the public, supervisor, or other employees," and "violation of the rules, regulations, or lawful orders of the Board of Education or any directive of the Superintendent of Schools, issued pursuant to the rules of the Board of Education."

WHEREAS, a grievance was filed by CSO concerning the Grievant's termination; a Step 2 grievance hearing was held on September 25, 2003 and a decision rendered on November 25, 2003 denying the grievance. A Demand for Arbitration was filed on December 12, 2003.

WHEREAS, the Parties, in the spirit of good faith, have engaged in settlement discussions to resolve this dispute;

The Parties hereby agree that:

1. DCPS shall, upon the execution of this Agreement, reinstate the Grievant as a principal with the school system, effective the date of her termination, for the purpose of there being no break in service for retirement and benefit purposes, but not later than school year 2004-2005, place her at an appropriate high school, provided, however, she is not returned to her position at Anacostia Senior High School;

2. DCPS shall, upon the execution of this Agreement, rescind and remove from the Grievant's Official Personnel Folder all documents pertaining to the Grievant's termination.

3. Within thirty (30) days of signing this Agreement, DCPS shall make the grievant whole and shall pay to the Grievant, back pay from August 6, 2003 through the effective date of her reinstatement less ten (10) days. The ten (10) days will be considered leave without pay. Any back pay amounts will be subject to all taxes and deductions as required by Federal and Local laws.

4. DCPS shall rescind and remove from the Grievant's Official Personnel Folder all documents pertaining to the Grievant's termination.

_PC.Re_ (Initials - CSO)
_M.M._ (Initials - Grievant)
_AB_ (Initials - DCPS)

Settlement Agreement – Mildred Musgrove
Page 2

5.  In exchange for, and as an express condition of aforesaid actions by DCPS,
CSO shall withdraw the grievance-arbitration matter filed on behalf of the
Grievant.

6.  Grievant hereby waives, releases and agrees not to pursue or file any action or
complaint of any nature or kind in any forum regarding her termination that
was the subject of this grievance.

7.  This Agreement shall not be offered as evidence, or introduced for any other
purpose, in any other forum, including but not limited to, judicial,
administrative, and/or arbitral proceedings, except for the sole purpose of
enforcing the obligations and restrictions which pertain exclusively to the
Grievant, the Union and DCPS.

8.  The terms and conditions of this Agreement shall not be considered precedent
and shall not be referenced in any subsequent matters arising between the
parties.

9.  In relation to the waiver and release set forth in paragraph 6 above, Grievant
agrees and understands that:

a.  She has carefully read the entire Agreement, including the provisions
specifically related to the release and waiver of claims;

b.  She understands the Agreement, including the provisions specifically
related to the release and waiver of her claims;

c.  She does not waive any rights or claims that arise after the date of
execution of this Agreement;

d.  She has been advised to consult with an attorney about this Agreement
before signing it;

e.  She has had an opportunity to consult with an attorney before signing
this Agreement;

f.  Grievant acknowledges that she has been given the opportunity to
consider this Agreement for twenty-one (21) days in accordance with
the Older Workers Benefit Protection Act and accepts this Agreement
in its present form;

g.  Grievant acknowledges that she has been advised that, following the
execution of this Agreement, she would have seven (7) days following
the date of execution to revoke the same by personally notifying the
Director of Labor-Management Relations of her intent to revoke the
Agreement within the seven (7) day period.

h.  In accordance with Paragraph g, above, this Agreement shall not
become effective or enforceable until the seven (7) day revocation
period has expired.

_(Initials - CSO)_
_(Initials - Grievant)_
_(Initials - DCPS)_

SENT BY:MOONEY, GREEN et al ; 6- 8- 4 ; 9:08AM ; MGBGS→ 2025268088;# 5/ 5

Settlement Agreement – Mildred Musgrove
Page 3

IN WITNESS WHEREOF, the PARTIES agree to the terms of this AGREEMENT and affix their signatures thereon.

COUNCIL OF SCHOOL OFFICERS

By: _Bernard C. Lucas, Sr._                    Date: _May 25, 2004_
    Bernard C. Lucas, Sr. President
                      Sr. 602

By: _Mildred L. Musgrove_                       Date: _May 25, 2004_
    Mildred Musgrove, Grievant

DISTRICT OF COLUMBIA PUBLIC SCHOOLS

By: _Lorena Blackwell_                          Date: _6/2/04_
    Lorena Blackwell, Director LMER

_BCL_ Sr. (Initials - CSO)
_____ (Initials - Grievant)
_LB_ (Initials - DCPS)

# Beins, Axelrod Kraft, Gleason & Gibson, P.C.

Hugh J. Beins
Jonathan G. Axelrod
Barbara Kraft*
Edward M. Gleason*
Richard W. Gibson**
Sarah J. Starrett*†
H. David Kelly, Jr.††
Regina Markey
E. Lindsey Maxwell, II
Anh-Viet Ly**

Beth Slavet
Of Counsel

* also admitted in MD
** also admitted in VA
• also admitted in PA
† also admitted in FL
†† also admitted in MA, MI

1717 Massachusetts Avenue, N.W., Suit 704
Washington, D.C. 20036-2001 · www.ba KGG.COM
ph: 202.328.7222 · fax: 202.328.7030

20 September 2004

Ms. Valerie Jones
District of Columbia P ublic Schools
Office of Human Reso urces
825 North Capitol Str et, NE
6th Floor
Washington, DC 200C 2

Re:     Dr. Mildred Musgrove
          )HR Docket No. 04-249-DC (CN)

Dear Ms. Jones,

As we discusse l in our mediation this morning, we are comfortable taking this complaint of discrimir ation to trial. We believe that Dr. Musgrove has been discriminated against due to her age nd her gender. Specifically, she was not given the same administrative support as other senio high school principals even though she was told that she was going to the "worst high school in the district. Furthermore, we believe that she wasn't given the same bonuses as her male co unterparts. In addition, she has experienced pain and suffering during this entire ordeal. Dr. Musgrove has been forced to retire given the emotional stress and damage to her profess onal reputation during this entire ordeal. We also feel that DCPS continues to retaliate a gainst Dr. Musgrove by not fulfilling its obligation under the June 2, 2004 settlement agree nent between her, her union and DCPS.

However, in go d faith, Dr. Musgrove is willing to settle her complaint of discrimination in the amount of $450 000. This amount includes a substantive settlement of all claims for $435,000 and her atto ney fees of $15,000. In addition, we would still expect DCPS to pay Dr. Musgrove all amounts lue under the June 2 settlement agreement.

If these terms a e agreeable, please feel free to contact me at the above number to discuss the specific ter ns.

Sincerely,

E. Lindsey Maxwell II, Esq.



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

*Office of Human Resources*
*Office of Employee Services*
825 North Capitol Street, NE, Sixth Floor
Washington, DC 20002-4232
202/442-5424, fax: 202/442-5315
www.k12.dc.us


September 21, 2004

E. Lindsey Maxwell
1717 Massachusetts Avenue, NW, Suite 704
Washington, DC 20036-2001

<div align="center">

Re:  Dr. Mildred Musgrove
OHR 04-249-DC (CN)

</div>

Dear Attorney Maxwell:

Please be advised that this office received your correspondence regarding Dr. Musgrove's complaint. Your letter is now being transferred to the Office of the Attorney General, District of Columbia for review.

If you have any questions, please call me at 442-5425.

Sincerely,

Valarie A. Jones, Esq.
EEO Legal Counsel

**U.S. Equal Employment Opportunity Commission**
**Washington Field Office**

1801 L Street, N.W.
Suite 100
Washington, DC 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0739
1-800-669-4000

Mildred L. Musgrove
1010 Taylor Street, N.E.
Washington, DC 20017

Re:   Mildred L. Musgrove vs. D.C. PUBLIC SCHOOLS
        EEOC No: 10C-2004-00214

Dear Dr. Musgrove:

In view of the agreement reached between you and D.C. PUBLIC SCHOOLS, the Equal Employment Opportunity Commission (EEOC) will take no further action on this charge.

The EEOC will discontinue processing the above noted charge. This action does not reflect any judgement by the EEOC as to the merit of the charge or the terms of the settlement. Furthermore, the EEOC does not waive its right to process any other charge, including a charge filed by a Commissioner of the EEOC, or to institute a directed Age Discrimination in Employment Act (ADEA) or directed Equal Pay Act (EPA) investigation of the respondent.

On Behalf of the Commission:

JUL 2 1 2005
Date

Dana Hutter
Director

cc:

Valarie Jones
D.C. PUBLIC SCHOOLS
825 North Capitol Street, N.E.
Washington, DC 20002

To: Simone Greggs
102 Steeplechase Way, Unit F
Largo, MD 20774

From: Washington Field Office
1801 L Street, N.W.
Suite 100
Washington, DC 20507

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2004-00240 | David Gonzalez,<br>State & Local Coordinator | (202) 419-0714 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature: Dana R. Hutter]*

**JUL 2 1 2005**

Enclosure(s)

**Dana Hutter,**
**Director**

*(Date Mailed)*

cc: **Kim Creighton**
**HARD ROCK CAFE**
**6100 Old Park Lane**
**Metro Market, FL 32835**

Enclosure with EEOC
Form 161-B (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --**
### Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
### or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – not 12/1/02 – in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA backpay recovery period.

### ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**P a r e n n i a l**
L A W   G R O U P,  L.L.P.

4 August 2005

Valarie Jones
DC Public Schools
825  North Capitol St., NE
Washington, DC 20002

    Re: Mildred Musgrove

Dear Ms. Jones,

   Please be advised that we do not consider this matter settled.  While the issue of back pay during Dr. Musgrove's suspension was the topic of the agreement negotiated between DCPS and the Council of School Officer's Union, Dr. Musgrove's initial claim at the DC Office of Human Rights was that DCPS had violated the Equal Pay Act.  Again, this issue was never resolved and therefore we consider it still open.

   As you are aware, on September 20, 2004, I sent you a letter offering to settle this case in the amount of $450,000 which included her attorney fees in the amount of $15,000. Your response to that letter of September 21, 2004 stated that the offer of settlement was being forwarded to the Attorney General of the District of Columbia for review.  I have not yet heard from them, therefore, I will assume that the offer still is being reviewed almost a year later.

   I received a letter from the EEOC from Dana Hutter, Director, stating that the investigation had been closed in this matter.  This letter is being copied to the attention of both Ms. Hutter and David Gonzales, the EEOC representative on this case to inform them that this case should not have been closed because the matter has not been resolved.

   We look forward to hearing from you soon.

         Sincerely,

         E. Lindsey Maxwell II, Esq.

CC: Dana Hunter
   David Gonzales

# Perennial
### L A W   G R O U P,  L.L.P.

16 May 2006

Dianne Betz
D.C. Office of Human Rights
441 4th ST., NW
Suite 570N
Washington, DC 20001
VIA FAX and MAIL

> Re:    Mildred Musgrove v. DCPS
>        OHR 04-249-DC (CN)

Dear Ms. Betz,

Per your request on 8 May 2006, I am writing this letter to outline our position with regards to this case that was filed with your office on 14 May 2004.

As you are aware, Dr. Musgrove filed this case with your office on 14 May 2004. Her claim, which I am attaching for your file, outlines claims for disparate treatment, age discrimination, retaliation, and hostile work environment. Specifically, she cites incidents of receiving harassing phone calls, being improperly suspended in retaliation for violating a directive and for being terminated for reasons where a similarly situated male had not. In addition, she made a claim regarding violations of the Equal Pay Act. Her charge was taken by Haydn Demas, an employee in your office.

Soon after her claim was filed, it was reported to us via letter dated 14 May 2004, that Bobbi L. James-Hoye, Esq. would be investigating this case. We never heard anything else from her.

On 24 May 2004, a confidential settlement agreement was reached between Dr. Musgrove, her Union and DCPS. The agreement resolved issues of back pay regarding her grievance filed in 2003. A review of this settlement specifically EXCLUDES any other claims that she may have against DCPS. In other words, it only includes her grievance which, by its very nature, could not have included claims of discrimination because your agency has exclusive jurisdiction over these claims. Any claims of discrimination could not have been covered under her grievance because the Union contract prohibits it.

Contrary to your assertions, we received no letter from your office indicating that this charge was closed and we are still waiting for your office to send us that document for our files (please include a copy of the returned

Musgrove v, DCPS
16 May 2006
Page 2

envelope and signature card). We never had a follow up mediation after our initial mediation session in July 2004 (Ms. Stewart). We never heard nor were asked for any additional evidence with regards to any investigation ( Ms. Hoye or Ms. Thomas). We have received a total of only five (5) written communications from your office regarding this case in the past two (2) years.

Instead, we have spent countless hours attempting to convince your office to do what the statute mandates; investigate and report. While my time and energy is supposed to be spent as an advocate on behalf of my client with regards to the opposing side, I have spent time fighting the Office of Human Rights. I have communicated with at least half a dozen employees there including the Director, Kenneth Saunders and to my chagrin, have gotten absolutely nowhere in having any type of meaningful review of this case. Your only substantive comments on this case focus on the only claim that your office has no jurisdiction over...what happened to the rest of her claims? They surely were not covered by the narrowly constructed settlement agreement that covered her grievance. Furthermore, why is your office raising a possible defense for DCPS? If they feel that the settlement agreement covers claims of discrimination then it should be up to them to assert it in their own defense. It is the job of your office to, again, investigate and report. To date, you have done neither. Meanwhile, evidence has been destroyed, witness memories have faded, and the case has gone cold.

I am respectfully requesting a meeting with you and your staff immediately to discuss the status of this case and to initiate the investigation which should have occurred years ago.

Sincerely,

E. Lindsey Maxwell II, Esq.

Enclosures

CC:    K. Saunders (letter only)
       M. Thomas (letter only)
       H. Demas (letter only)
       G. Stewart (letter only)

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**Office of Human Rights**



**Judiciary Square Office**
441 4th Street, NW, Suite 570N
Washington, DC 20001
Phone: (202) 727-4559  Fax: (202) 727-9589

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559  Fax: (202) 645-6390

June 5, 2006

Mr. E. Lindsey Maxwell II, Esq.
Perennial Law Group, L.L.P.
C/o Dr. Mildred L. Musgrove
1455 Pennsylvania Avenue NW
Suite 225
Washington, DC  20004

        Re:    Mildred Musgrove v. D.C. Public Schools
                Docket No. 04-249-DC (CN)
                EEOC No. 10CA400214

Dear Mr. Maxwell:

Per our previous conversation and in light of the fact that there is a private Settlement Agreement; that your remaining claims regarding the Equal Pay Act; and not timely filing reconsideration request, on June 2, 2006 your client's case was forwarded to the Equal Employment Opportunity Commission (EEOC).

Additionally, per my conversation with David Gonzalez, State and Local Coordinator for the EEOC, your case will be reviewed by the EEOC.

If you have any further questions, Mr. Gonzalez may be contacted at the following address:

        Equal Employment Opportunity Commission
        1801 L. Street, N.W.,
        Second Floor,
        Washington, DC  20005
        (202) 419-0700

Musgrove v. DCPS
June 5, 2006
Page 2


Sincerely,


Kenneth L. Saunders
Director


cc:  Equal Employment Opportunity Commission
     David Gonzalez
     1801 L. Street, N.W., Second Floor
     Washington, DC  20005

# Perennial
### L A W   G R O U P, L.L.P.

14 June 2006

Mr. David Gonzalez
Equal Employment Opportunity Commission
1801 L St., NW
Washington, DC 20005

       Re:   Mildred Musgrove v. DCPS
             EEOC No. 10CA400214

Dear Mr. Gonzalez,

     I am in receipt of a letter from Kenneth Saunders of the DC Office of Human Rights dated 5 June 2006 in which he states that your office is reviewing the aforementioned case. In short, this case was mistakenly closed by his office because of their failure to investigate the case and their misinterpretation of a settlement agreement.

     I am eager to discuss these details and to assist in your review in any way possible. Please note that DCPS has not objected to the reopening of this case because they too are aware of the mistakes made by the DCOHR. Please contact me as soon as possible to discuss this case. If I can be of any further assistance, please do not hesitate to contact me.

                           Sincerely,

                           E. Lindsey Maxwell II, Esq.

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Mildred L. Musgrove**
**c/o E. Lindsey Maxwell, Esq.**
**Perennial Law Group, LLP**
**1455 Pennsylvania Ave., NW, Suite 100**
**Washington, D.C. 20004**

From:   **Washington Field Office - 570**
1801 L Street, N.W.
Suite 100
Washington, DC 20507

☐   On behalf of person(s) aggrieved whose identity is
    *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2004-00214 | **David Gonzalez,**<br>**State & Local Coordinator** | (202) 419-0714 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐   While reasonable efforts were made to locate you, we were not able to do so.

☐   You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒   Other (briefly state)   **ADMINISTRATIVE CLOSURE**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Dana R Hutter* (signature)

**Dana Hutter,**
**Director**

August 7, 2006
*(Date Mailed)*

Enclosure(s)

cc:   **Ms. Valarie Jones**
**D.C. Public Schools**
**825 North Capitol Street, N.E.**
**Washington, DC 20002**



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of Human Resources*
825 North Capitol Street, NE, Sixth Floor
Washington, DC 20002-4232
202/442-5420, fax: 202/442-5315
www.k12.dc.us

July 9, 2004

Mildred L. Musgrove
1010 Taylor Street, NE
Washington, DC 20017-1818

You have been assigned to the following position effective Monday, July 12, 2004

| | |
|---|---|
| Reporting Site: | Coolidge Senior High School |
| Supervisor: | Dr. Juan R. Baughn, Assistant Superintendent |
| Address: | 6315 5th Street, NW |
| Telephone Number: | 202-576-6143 |
| Assignment: | Principal |

Dr. Juan R. Baughn, Assistant Superintendent has been notified of your assignment and of your reporting date.

You may contact Dr. Juan R. Baughn or your staffing specialist Natasha Mahasa at 202-442-5365 with any questions you may have regarding your new assignment.

Thank you for your commitment to the children in the District of Columbia Public Schools. May you have a productive school year in your new assignment.

Sincerely,

*Valarie A. Sheppard*

Valarie A. Sheppard, MA
Director, Staffing and Employment Services

cc:     Mark J. Murphy, Attorney
        Loretta Blackwell, LMER
        Juan R. Baughn, Division IV- Assistant Superintendent
        Staffing Specialist, Natasha Mahasa
        Official Personnel File

_____          _____
Acknowledgement of Receipt                    Date

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☒ FEPA
☐ EEOC

04-249-DC (CN)
10CA400214

D.C. Office Of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Dr. Mildred L. Musgrove | (202) 635-7080 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1010 Taylor Street, N.E. Washington, DC 20017 | | 02/07/1947 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| D.C. Public Schools | Cat D (501 +) | (202) 442-4080 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 825 North Capitol Street, N.E., Washington, DC 20002 | | 001 |

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 09/01/1998 | 11/14/2003 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*:

I believe I have been discriminated against and subjected to disparate treatment in the terms, conditions, privileges and the involuntary termination of employment on the bases of my gender(female), age (56) and retaliation because:

I was hired by Respondent as a Teacher on October 1, 1970, and I performed my duties satisfactorily. I was appointed to my final position as a Senior High School Principal on December 17, 1997.

From September 1998 up to the 2002-2003 school year, Respondent subjected me to disparate treatment when I was not compensated as my similarly situated male senior high school principals. I was not afforded the resources and support that Respondent gave to the male high school principals, for which I complained continually to Respondent.

In retaliation, Respondent subjected me to harassment when from Spring 2002 through September 2002, I received many intimidating phone calls about the upcoming September elections. In August 2002, Respondent's Chief of Staff (male) stated that he felt that I was frustrated, divisive, bitter and angry. In October 2002, Respondent's Director of Communications (female) chastised me for failing to return a telephone call to a Washington Post reporter. This harassment created a hostile work environment for me.

** Text is Continued on Attached Sheet(s) **

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | *Mildred L. Musgrove* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* |
| Date                    Charging Party *(Signature)* | 5/14/04 |

Haydn Demes
Notary Public, District of Columbia
My Commission Expires 12-14-2008

EEOC FORM 5 (Rev. 07/99)

**FILE COPY**

May 14 13:57 2004  CP Initials *MLM*. Chg # , Attachment Page 1

--------------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
--------------------------------------------------------------------------

On February 25, 2003, Respondent placed me on administrative leave for
an allegation of violating the Superintendent's directive regarding fire
code violations, but did not suspend a similarly situated male principal
for the same infraction.

On July 16, 2003, I received a telephone call from a reporter with The
Washington Post who wanted my reaction to my being fired.  On July 17,
2003, I read about my firing in The Washington Post.  On July 23, 2003,
Respondent's security delivered my termination letter, effective August
6, 2003, to my home.  However, I did not receive my annual leave pay out
until November 14, 2003.

I charge Respondent with an unlawful discriminatory behavior on the bases
of sex, age, and retaliation, in violation of the D.C. Human Rights Act of
1977, as amended, Title VII of the Civil Rights Act of 1964, as amended,
and the Age Discrimination in Employment Act.  I have not commenced any
action, civil, criminal or administrative, based on the above
allegations, other than the following:  CROSS FILED WITH THE EEOC.