# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                    )
MILDRED MUSGROVE,                   )
                                    )
              Plaintiff,            )
                                    )  Civil Action No. 06-1861(EGS)
         v.                         )
                                    )
THE GOVERNMENT OF THE               )
DISTRICT OF COLUMBIA,               )
                                    )
              Defendant.            )
                                    )
```

## MEMORANDUM OPINION

Plaintiff, Mildred Musgrove, was employed as the principal of Anacostia High School from 1997 until 2003.  Plaintiff claims that Defendant District of Columbia (the "District") discriminated against her by (i) unlawfully compensating male high school principals at a higher rate of pay than her in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); (ii) subjecting her to a hostile work environment in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, *et seq.* ("Title VII"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.* ("DCHRA"); and (iii) impermissibly terminating her employment because of her gender and age in violation of both Title VII and the DCHRA.  Pending before the Court is defendant's motion for summary judgment.  Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for

the reasons set forth below the Court hereby **GRANTS** defendant's
motion for summary judgment.

## I.  BACKGROUND

Plaintiff, a female (age 60), was employed as the principal
of Anacostia High School from December 17, 1997 through August
2003.  Pl.'s Second Am. Compl. ("Compl.") ¶¶ 4, 28; Def.'s
Statement of Material Facts Not in Dispute ("Def.'s SMF") ¶ 1.[1]
At some point in 1998, plaintiff alleges that she became aware
that "other male principals . . . were being paid more than she
was in the way of salary, bonuses and other financial
incentives."  Compl. ¶ 6.  Plaintiff asserts that although she
repeatedly complained about the perceived inequity, her
entreaties went unanswered.  Compl. ¶¶ 7—9.  Plaintiff also

_____

[1]     Plaintiff failed to file a separate statement of
genuine issues of material fact as required by the local rules.
*See* Local Civil Rule 7(h)(1) ("An opposition to [a motion for
summary judgment] shall be accompanied by a separate concise
statement of genuine issues setting forth all material facts as
to which it is contended there exists a genuine issue necessary
to be litigated, which shall include references to the parts of
the record relied on to support the statement.").  Nor did she
file a response admitting or disputing the facts identified by
defendant in its statement of material facts not in dispute.
Instead, plaintiff submitted her own "Statement of Undisputed
Material Facts."  While "the court may assume that facts
identified by the moving party in its statement of material facts
are admitted, unless such a fact is controverted in the statement
of genuine issues filed in opposition to the motion[,]" Local
Civil Rule 7(h)(1), the Court declines to do so in this case as
it is clear from a review of plaintiff's "Statement of Undisputed
Material Facts" that she does, indeed, contest many of the facts
identified by defendant.  The Court therefore relies upon the
statements of the party only to the extent that they are not in
dispute.

claims that during her time at Anacostia, she was treated with hostility by various supervisors, including the superintendent. *See* Compl. ¶¶ 14, 15, 16, 18, 19, 21, 22.

On February 24, 2003, there was a small fire at Anacostia High School. Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF") ¶ 15. Concerned about the potential for damage or theft, plaintiff ordered the school's maintenance staff to lock the doors located near the school's computer labs. Pl.'s SMF ¶ 15. As a result of this action, plaintiff received a citation from the fire marshal for violating the fire code. Compl. ¶ 24. The next day plaintiff was placed on administrative leave for breaching a directive from the superintendent "regarding fire code violations." Compl. ¶ 24. Approximately five months later, plaintiff received a letter from the District informing her that she had been terminated. Pl.'s SMF ¶ 18. The letter specified two bases for her termination: (i) "[d]iscourteous treatment of the public, supervisor, or other employees," D.C. Mun. Regs. 5-E, § 1401.2(n) (2002), and (ii) "[v]iolation of the rules, regulations, or lawful orders of the Board of Education or any directive of the Superintendent of Schools, issued pursuant to the rules of the Board of Education," D.C. Mun. Regs. 5-E, § 1401.2(t).[2] *See* Pl.'s SMF ¶¶ 18-19.

---

[2] Plaintiff testified that the first reason stemmed from a hostile work environment complaint that was filed against her by a staff member at Anacostia High School, and the second reason

On May 14, 2004, plaintiff filed a charge of discrimination with the District of Columbia Office of Human Rights ("DCOHR") alleging "unlawful discriminatory behavior on the bases of sex, age, and retaliation."  Def.'s SMF ¶ 4; *see generally* Def.'s Ex. 2, EEOC Form 5.  This charge was cross-filed with the EEOC.  Pl.'s SMF ¶ 22.  Following mediation and investigation, the EEOC issued plaintiff a right to sue letter on August 7, 2006.  Pl.'s SMF ¶ 22.  On November 1, 2006, plaintiff filed her complaint in this Court.  Upon conclusion of discovery, defendant filed a motion for summary judgment.  This motion is now ripe for determination by the Court.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting

---

stemmed from the fire code violation.  *See* Pl.'s Dep. at 284:16-285:11.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The
party seeking summary judgment bears the initial burden of
demonstrating an absence of genuine issues of material fact.
*Celotex*, 477 U.S. at 322.  In determining whether a genuine issue
of material facts exists, the Court must view all facts in the
light most favorable to the non-moving party.  *See Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986);
*Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of
more than mere unsupported allegations or denials and must be
supported by affidavits or other competent evidence setting forth
specific facts showing that there is a genuine issue for trial.
*See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  If the
evidence favoring the non-moving party is "merely colorable, or
is not significantly probative, summary judgment may be granted."
*Anderson*, 477 U.S. at 250.  Moreover, "although summary judgment
'must be approached with special caution in discrimination cases,
a plaintiff is not relieved of her obligation to support her
allegations by affidavits or other competent evidence showing
that there is a genuine issue for trial.'"  *Bolden v. Winter*, 602
F. Supp. 2d 130, 136 (D.D.C. 2009) (quoting *Morgan v. Fed. Home
Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001)).
Summary judgment will be granted, therefore, if the plaintiff
fails to submit evidence that creates a genuine factual dispute

or entitlement to judgment as a matter of law. *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 181 (D.D.C. 2007); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases" (citing cases)).

## III. ANALYSIS

Defendant moves for summary judgment as to plaintiff's EPA, Title VII, and DCHRA claims, asserting both procedural and evidentiary deficiencies. Plaintiff, by contrast, contends that her claims are properly before the Court, and further argues that genuine issues of material fact prevent an award of summary judgment in this case. For the reasons discussed below, the Court finds it appropriate to **GRANT** defendant's motion for summary judgment as to each of plaintiff's claims.

### A. Equal Pay Act Claim

#### i. Legal Framework

The Equal Pay Act makes it unlawful for an employer to "discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he [or she] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C § 206(d)(1). The Act "stands for the straight-forward proposition that employees

doing equal work should be paid equal wages, regardless of sex."
*Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 815 F.2d 1519,
1523 (D.C. Cir. 1987) (internal quotation marks omitted).  "The
initial burden to prove wage disparity and job equality is on the
plaintiff."  *Id.* (citing *Corning Glass Works v. Brennan*, 417 U.S.
188, 195 (1974)).

In order to establish a prima facie violation of the EPA,
"'[a plaintiff must] show by a preponderance of the evidence that
[he or] she was discriminated against on the basis of sex in [his
or] her pay.  Particularly, [he or] she [must] show that: (1) [he
or] she was . . . doing substantially equal work on a job, the
performance of which required substantially equal skill, effort,
and responsibility as jobs held by members of the opposite sex;
(2) the job was performed under similar working conditions; and
(3) [he or] she was paid at a lower wage than members of the
opposite sex doing equal work.'"  *Smith v. Janey*, 664 F. Supp. 2d
1, 12 (D.D.C. 2010) (quoting *Nyman v. FDIC*, 967 F. Supp. 1562,
1573 (D.D.C. 1997)).  "Where a plaintiff establishes a *prima
facie* case of disparate pay under the Equal Pay Act, a defendant
can avoid liability by pleading an affirmative defense justifying
a pay disparity if it is 'pursuant to (i) a seniority system;
(ii) a merit system; (iii) a system which measures earnings by
quantity or quality of production; or (iv) a differential based

on any other factor other than sex.'"  *Gaujacq v. EDF, Inc.*, 601

F.3d 565, 575 (D.C. Cir. 2010) (quoting 29 U.S.C. § 206(d)(1)).

### ii.  Analysis

Defendant contends that summary judgment must be granted on

plaintiff's EPA claim, arguing that plaintiff cannot establish a

prima facie violation of the Act.  After a careful review of the

record in this case, this Court agrees.[3]

Citing no record evidence, plaintiff avers that "[b]eginning

in 1998, [she] became aware that other male principals at other

similarly situated high schools, who were hired or promoted at

the same time as she, were being paid more than she was in the

way of salary, bonuses and other financial incentives."  *See*

Pl.'s SMF ¶ 4 (citing her complaint).[4]  Although plaintiff

testified about five male high school principals whom she

believed were being paid higher salaries and receiving additional

bonuses and incentives,[5] *see* Pl.'s Dep. Tr. at 121:1-122:18, she

---

[3]     Defendant also argues that plaintiff's EPA claim is
time-barred.  However, because the Court finds that plaintiff has
failed to establish a prima facie violation of the EPA, the Court
will assume - without deciding - that plaintiff satisfied the
three-year statute of limitations set forth in 29 U.S.C.
§ 255(a).  *See* 29 U.S.C. § 255(a) ("[A] cause of action arising
out of a willful violation [of the EPA] may be commenced within
three years after the cause of action accrued[.]").

[4]     Plaintiff, in her "Statement of Undisputed Material
Facts," routinely cites either her complaint or her deposition
transcript generally.

[5]     Bonuses are considered wages for the purposes of the
EPA.  *See* EEOC Regulations Relating to Labor, 29 C.F.R. § 1620.10

has failed to adduce any evidence in support of her claim that these individuals were, in fact, "similarly situated" to her.[6] Indeed, rather than produce evidence on the issue of job equality, plaintiff simply asserts that "[i]t is clear that principals in senior high schools who served during the same period of time would have more than comparable job duties."

_____

(2011) ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment.  The term includes all forms of compensation . . . whether called wages, salary, profit sharing, expense account, monthly minimum, bonus . . . or some other name.").

[6]    It is also unclear to the Court whether plaintiff was, in fact, being paid less than the male senior high school principals she identified in her deposition.  For instance, on the issue of salary, plaintiff testified that she received the highest level of pay possible for her position at the time.  *See* Pl.'s Dep. Tr. at 162:3-5; *see also* Pl.'s Dep. Tr. at 118:20-119:3 (agreeing that she was given "the appropriate salary based on seniority, size and degrees" when she went to Anacostia High School).  And while plaintiff identified one male principal whom she believed had received a bonus that she had not received, the Court was provided with no evidence in support of this claim other than plaintiff's deposition testimony and a chart of unknown origin.  *See* Pl.'s Ex. 7.  Even assuming, however, that each of the male principals identified by plaintiff received higher salaries and/or additional bonuses compared to plaintiff, without evidence regarding the skills and effort required for the plaintiff's and her comparators' jobs, or the attendant responsibilities associated with each of their positions, plaintiff cannot establish a prima facie violation of the EPA. *See, e.g.*, *Nuzzi v. Bourbonnais Elem. Sch. Dist.*, 360 Fed. Appx. 664, 666-67 (7th Cir. 2010) (affirming the lower court's determination that the plaintiff had failed to establish a prima facie violation of the EPA where the plaintiff's comparators - two higher-paid male principals - supervised a larger staff than the plaintiff principal).

Pl.'s Opp'n at 13.  As discussed above, however, such self-serving assertions are insufficient to survive a motion for summary judgment.

Moreover, the Court finds the lack of record evidence on the issue of job equality particularly problematic in this case due to plaintiff's concession that salaries for senior high school principals in the District are based upon factors such as student body size, length of service with DCPS, and education, *see* Pl.'s Dep. Tr at 118:20-119:3, 124:17-125:2, and that bonuses are based upon factors such as "the condition of the school."  Pl.'s Dep. Tr. at 126:14-19 (explaining that "the rougher the school, the more likely there was a bonus").  Without evidence on any of these issues, the Court finds that plaintiff's "non-specific, conclusory assertion[s] . . . fall[] short of establishing by a preponderance of the evidence that, compared to [her] colleagues, the plaintiff was doing 'substantially equal work on a job, the performance of which required substantially equal skill, effort, and responsibility.'"  *Smith*, 664 F. Supp. 2d at 12 (quoting *Nyman*, 967 F. Supp. at 1575).  "Such a lack of evidence . . . foredoom[s an] Equal Pay Act claim."  *Id.* (internal quotation marks omitted).  Accordingly, because the record before the Court is insufficient to allow a rational trier of fact to find for plaintiff on her EPA claim, the Court **GRANTS** defendant's motion for summary judgment on this claim.

**B. Title VII Claims**

Under Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice" for employers "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Pursuant to this statutory provision, plaintiff alleges that defendant subjected her to a hostile work environment and impermissibly discriminated against her on the basis of her sex and her age.

**i. Age Discrimination**

As a threshold matter, the Court agrees with defendant that plaintiff's claim for age discrimination under Title VII cannot survive. Unlike the DCHRA, *see infra* Section III.C, Title VII does not prohibit discrimination on the basis of age. *See* 42 U.S.C. § 2000(e).[7] The Court, therefore, **GRANTS** defendant's motion for summary judgment as to plaintiff's age discrimination claim under Title VII. The Court will now address plaintiff's two remaining Title VII claims: hostile work environment and sex discrimination.

_____

[7] The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), is the federal statute that prohibits discrimination on the basis of age. Plaintiff, however, never sought leave of the Court to amend her complaint to assert a claim under the ADEA nor did she acknowledge or respond to defendant's argument that "plaintiff cannot maintain a cause of action for age discrimination under Title VII," Def.'s Mot. at 16. *See generally* Pl.'s Opp'n.

### ii. Hostile Work Environment

#### a. Legal Framework

To sustain a hostile work environment claim, "a plaintiff must show that his [or her] employer subjected him [or her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

#### b. Analysis

Defendant argues that plaintiff's hostile work environment claim is procedurally deficient and fails as a matter of law. *See* Def.'s Mot. at 9-11. Plaintiff, by contrast, contends that her claim was timely filed and further asserts that she has established a prima facie case of hostile work environment. *See* Pl.'s Opp'n 10-12, 14-15. The Court will begin its analysis by addressing defendant's procedural arguments, and, in particular, its contention that this claim is time-barred.

"Before bringing a Title VII suit, a plaintiff must first file a timely EEOC charge." *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2196–97 (2010); *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). Title VII requires that a charge be filed within 180 or 300 days — depending on the state — "after the alleged unlawful employment action occurred." 42 U.S.C. § 2000e-5(e)(1). In this case, plaintiff had 300 days from the alleged violation to file her charge. *See generally* 29 C.F.R. § 1601.13(a)(4), (b)(1).

As discussed above, plaintiff filed a charge with the DCOHR and the EEOC on May 14, 2004. In her charge, she alleged that she was subjected to a hostile work environment from the spring of 2002 until October 2002. *See* Def.'s Ex. 2, EEOC Form 5 ("Respondent subjected me to harassment when from Spring 2002 through September 2002, I received many intimidating phone calls about the upcoming September elections. In August 2002, Respondent's Chief of Staff (male) stated that he felt that I was frustrated, divisive, bitter and angry. In October 2002, Respondent's Director of Communications (female) chastised me for failing to return a telephone call to a Washington Post Reporter. This harassment created a hostile work environment for me."). Defendant argues that plaintiff's charge is untimely with respect to this behavior, explaining that plaintiff's May 14, 2004 charge was filed well past the 300-day window provided by § 2000e-

13

5(e)(1). *See* Def.'s Mot. at 9. This Court agrees.[9]

Accordingly, the Court finds that plaintiff's hostile work environment claim under Title VII is time-barred with respect to the purported incidents that occurred in 2002.

Plaintiff also argues that another incident — which occurred after she had filed her charge with the DCOHR and EEOC — comprises part of her hostile work environment claim. *See* Pl.'s Compl. ¶ 38 (discussing the District's purported breach of its settlement agreement with her and asserting that "the hostile work environment had still continued"). Plaintiff did not, however, amend her charge to reflect this incident. Because "Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court,'" *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)), the

---

[9] Rather than directly addressing defendant's argument, plaintiff draws the Court's attention to its Memorandum Opinion dated March 16, 2009 (the "March 2009 Memorandum Opinion"). *See* Pl.'s Opp'n at 11-12. In its March 2009 Memorandum Opinion the Court found, among other things, that plaintiff timely filed her administrative complaint with respect to her allegation of discriminatory discharge. *See* March 2009 Mem. Op. at 7 ("Plaintiff filed her claims with OHR on May 19, 2004, alleging there that the initial discriminatory discharge occurred on July 16, 2003. She, therefore, met the one-year deadline for her initial filing[.]"). The Court did not, however, address whether plaintiff's hostile work environment claim under Title VII was timely filed. Plaintiff's reliance on the Court's March 2009 Memorandum Opinion for this issue, therefore, is misplaced. As discussed, *infra*, however, even if plaintiff's hostile work environment claim was not procedurally barred, it would nevertheless fail because plaintiff's evidence is insufficient to support a claim for hostile work environment.

Court finds that plaintiff's second hostile work environment claim is not properly before the Court.  Accordingly, as a result of these procedural deficiencies, the Court concludes that defendant is entitled to summary judgment on plaintiff's hostile work environment claim under Title VII.

Even assuming, however, that plaintiff's hostile work environment claim was timely filed and administratively exhausted, the Court finds that summary judgment is warranted because "the totality of circumstances presented in this record does not rise to the level necessary to support a hostile work environment claim." *Baloch*, 550 F.3d at 1201.  Specifically, having closely reviewed the record citations relied upon by plaintiff in support of her hostile work environment claim, *see* Pl.'s Opp'n at 14-15, the Court finds that the incidents upon which plaintiff relies - (i) being "loud[ly]" reprimanded for failing to return the call of a *Washington Post* reporter, Pl.'s Dep. Tr. at 204, (ii) having the Superintendent make occasional unannounced visits at her school, and (iii) having the Superintendent refuse to meet with her "[o]n more than one occasion," Pl.'s Opp'n at 15, - are simply insufficient in their frequency, severity, and offensiveness to support a claim for hostile work environment.  In addition, plaintiff has also failed to provide the Court with any evidence "indicating any 'linkage of correlation' between the allegedly harassing behavior and the

claimed ground of discrimination." *Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 166 (D.D.C. 2010) (citing cases); *see also, e.g.*, *Baloch*, 550 F.3d at 1201 (affirming the district court's award of summary judgment on a hostile work environment claim where "none of the comments or actions directed at [the plaintiff] expressly focused on his race, religion, age, or disability" and "the disciplinary actions and workplace conflicts were not so 'severe' or 'pervasive' as to have changed the conditions of [the plaintiff's] employment"). Accordingly, as a result of these procedural and evidentiary deficiencies, the Court **GRANTS** defendant's motion for summary judgment on this claim as well.

### iii. Sex Discrimination

#### a. Legal Framework

Discrimination claims under Title VII have traditionally been analyzed under the *McDonnell Douglas* burden shifting framework. The D.C. Circuit, however, has instructed that when considering a motion for summary judgment in an employment discrimination case, a district court need not consider whether a plaintiff has actually satisfied the elements of a prima facie case if the defendant has offered a legitimate, non-discriminatory reason for its actions. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, "the district court must resolve one central question:

Has the employee produced sufficient evidence for a reasonable
jury to find that the employer's asserted non-discriminatory
reason was not the actual reason and that the employer
intentionally discriminated against the employee on the basis of
race, color, religion, sex, or national origin?" *Id.* In other
words, a court must determine whether "all the evidence, taken
together, [is] insufficient to support a reasonable inference of
discrimination." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir.
2009) (citing *Brady*, 520 F.3d at 494-95); *see also Holcomb v.
Powell*, 433 F.3d 889, 896-97 (D.C. Cir. 2006) ("'[T]he plaintiff
must show that a reasonable jury could conclude from all of the
evidence that the adverse employment decision was made for a
discriminatory reason.'" (quoting *Lathram v. Snow*, 336 F.3d 1085,
1088 (D.C. Cir. 2003))). "[A]ll of the evidence," in turn, means
"any combination of (1) evidence establishing the plaintiff's
prima facie case; (2) evidence the plaintiff presents to attack
the employer's proffered explanation for its actions; and (3) any
further evidence of discrimination that may be available to the
plaintiff, such as independent evidence of discriminatory
statements or attitudes on the part of the employer." *Holcomb*,
433 F.3d at 897; *see also Washington v. Chao*, 577 F. Supp. 2d 27,
39 (D.D.C. 2008) ("[I]n all instances where a defendant has
asserted a legitimate, non-discriminatory reason for its conduct,
the Court shall evaluate all of the evidence in the record,

including that which would be used to establish a prima facie case (but not for the purpose of evaluating whether a prima facie case has been established), to address the ultimate question of discrimination vel non.").

A plaintiff bears the burden of persuasion to show that a defendant's proffered non-discriminatory reason for the challenged action is a pretext. *See Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 654 (D.C. Cir. 2003). "A plaintiff can carry this burden by showing that a non-discriminatory reason offered by a defendant is false, *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008), or otherwise 'presenting enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence.'" *Wicks v. Am. Transmission Co. LLC*, 701 F. Supp. 2d 38, 45 (D.D.C. 2010) (quoting *Desmond v. Mukasey*, 530 F.3d 944, 962 (D.C. Cir. 2008)). A plaintiff may also "attempt[] to produce evidence suggesting that the employer treated other employees of a different race, color, sex, or national origin more favorably in the same factual circumstances" than the employer treated the plaintiff. *Brady*, 520 F.3d at 495.

### b. Analysis

In this case, defendant has proffered a legitimate, non-discriminatory reason for plaintiff's termination. Specifically, defendant asserts that plaintiff was terminated for

(i) disregarding the superintendent's directive regarding locked doors at school in violation of the D.C. Fire Code; and (ii) the discourteous treatment of public employees. *See* Def.'s SMF ¶ 10; Def.'s Mot. at 15; *see also* Pl.'s SMF ¶¶ 18-19; Pl.'s Dep. Tr. at 284:16-285:11. Because defendant has put forth legitimate, non-discriminatory reasons for plaintiff's termination, the issue before the Court is whether plaintiff has produced sufficient evidence for a reasonable jury to find that defendant's asserted non-discriminatory reasons were not the actual reasons for the adverse employment action, and that the employer's actions were discriminatory. For the reasons discussed below, the Court finds that plaintiff has failed to meet this burden.

Plaintiff contends that defendant's legitimate, non-discriminatory reasons were pretext for sex discrimination "because [plaintiff] testified in her deposition that other males had also locked doors but had not suffered the same adverse employment action." Pl.'s Opp'n at 16. While plaintiff's testimony - if true - is compelling evidence in support of a claim of pretext, plaintiff has failed to provide the Court with any evidence in support of this allegation other than her own deposition testimony. Such self-serving testimony alone, however, is insufficient to survive a motion for summary judgment. *See Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) ("Self-serving testimony does not create

genuine issues of material fact."); *see also generally Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997) (on a motion for summary judgment, courts "examine the facts in the record and reasonable inferences in the light most favorable to the nonmoving party, but do not accept bare conclusory allegations as fact" (internal citation omitted)). Moreover, even if plaintiff had proffered competent evidence in support of these purported comparators, plaintiff has not alleged these individuals also violated D.C. Municipal Regulation §1401.2(n) - "[d]iscourteous treatment of the public supervisor or other employees" - or an analogous provision. Unless these proffered comparators also committed a second comparable offense, they are not "similarly situated" to plaintiff for purposes of Title VII. *See Adair v. Solis*, 742 F. Supp. 2d 40, 53 n.12 (D.D.C. 2010) ("To show that another individual is similarly situated, Plaintiff must demonstrate that all of the relevant aspects of their employment situation are nearly identical. Therefore, when, as here, an employer states that it took an adverse employment action due to the plaintiff's misconduct, the plaintiff's comparator must have been charged with a comparable offense and then treated less harshly than the plaintiff." (internal quotation marks and citation omitted)). In sum, having received no competent evidence in support of plaintiff's purported comparators, nor any evidence indicating that defendant's proffered explanation is unworthy of credence,

the Court finds that plaintiff has failed to carry the burden of persuasion on this issue.  The Court therefore finds that defendant is entitled to summary judgment on plaintiff's sex discrimination claim under Title VII.  Accordingly, the only claims remaining before the Court are plaintiff's claims of hostile work environment and discrimination under the DCHRA.

**C.  District of Columbia Human Rights Act Claims**

**i.  Legal Framework**

The DCHRA, like Title VII, prohibits certain discriminatory practices "[b]y an employer," making it unlawful for an employer to "fail or refuse to hire, or to discharge, any individual; or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment" based upon several protected categories including, *inter alia*, an individual's "race, color, religion, national origin, sex [or] age."  D.C. Code § 2-1402.11(a)(1).[10]  The purpose of the DCHRA

---

[10]  The DCHRA is broader than Title VII as it prohibits discrimination based on the "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual," while Title VII only prohibits discrimination with respect to an individual's "race, color, religion, sex, or national origin."  *Compare* D.C. Code § 2-1402.11(a)(1) *with* 42 U.S.C. § 2000e-2(a)(1).  Some of the additional categories protected under the DCHRA, however, are protected under other federal statutes.  *See, e.g.*, ADEA, 29 U.S.C. § 621 *et seq.* (age discrimination); Genetic Information Nondiscrimination Act of 2008, Pub. L. No. 110-233, 122 Stat. 881 (codified as amended in various sections of chapters 26, 29, and 42 of the United States Code).

is "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit." *Id.* § 2-1401.01. When construing provisions of the D.C. Code — including the DCHRA — this Circuit "defer[s] to the District of Columbia Court of Appeals on questions of statutory interpretation." *United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991). The District of Columbia Court of Appeals, in turn, "has made clear that federal case law addressing questions arising in Title VII cases is applicable to the resolution of analogous issues raised regarding DCHRA claims." *Ali v. Dist. of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 & n.3 (D.C. 1994)); *see also, e.g.*, *Wicks*, 701 F. Supp. 2d at 43-44 ("Discrimination claims brought under the DCHRA are analyzed in the same manner as claims brought under Title VII[.]" (citing cases)); *Elam v. Bd. of Trs.*, 530 F. Supp. 2d 4, 22 n.7 (D.D.C. 2007) ("The elements of a hostile work environment claim under the DCHRA mirror the federal requirements." (citing *Lively v. Flexible Packaging Assoc.*, 830 A.2d 874, 889 (D.C. 2003))). Likewise, age discrimination claims brought under the DCHRA are analyzed in the same manner as claims arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"). *See Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010) ("The courts of the District of Columbia 'look[] to federal court

decisions interpreting the [ADEA] when evaluating age discrimination claims under the DCHRA.'" (quoting *Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008))).

### ii.  Analysis

As a threshold matter, defendant argues that plaintiff's claims under the DCHRA are barred for failure to comply with D.C. Code § 12-309 ("§ 12-309").  Defendant also asserts, however, that plaintiff's DCHRA claims fail as a matter of law. Plaintiff, in turn, contends that her claims are in full compliance with § 12-309, and further asserts that genuine issues of material fact preclude an award of summary judgment on her DCHRA claims.  The Court will begin by addressing defendant's argument with regards to § 12-309.

### a.  D.C. Code § 12-309

Defendant first argues that "judgment must be entered in favor of the District for plaintiff's failure to comply with the mandatory requirements of § 12-309."  Def.'s Mot. at 11.  This provision states:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309. "Th[is] notice requirement is a prerequisite to a suit against the District of Columbia 'because it represents a waiver of sovereign immunity.'" *Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010) (quoting *Faison v. District of Columbia*, 664 F. Supp. 2d 59, 68 (D.D.C. 2009)). Compliance with the notice requirement is mandatory, *id.*, and "'is to be strictly construed[.]'" *Barnhardt v. District of Columbia*, 601 F. Supp. 2d 324, 329 (D.D.C. 2009) (quoting *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)). In addition, the District of Columbia Court of Appeals recently clarified that § 12-309 "applies to claims for unliquidated damages brought against the District of Columbia under the DCHRA." *Owens v. District of Columbia*, 993 A.2d 1085, 1089 (D.C. 2010).

The issue before the Court, therefore, is whether plaintiff satisfied § 12-309 when she sent a letter to an individual in the District of Columbia Public School's Office of Human Resources, which stated that she had been "discriminated against due to her age and gender" and that she was "comfortable taking this complaint of discrimination to trial." *See* Def.'s Ex. 4, Letter Dated Sept. 20, 2004; *see also* Def.'s Ex. 3, Pl.'s Resp. to Def.'s Interrog. (contending that the District was put on notice of plaintiff's claim as a result of the September 2004 letter). Although the Court previously found this letter sufficient to

satisfy the notice requirement of § 12-309, *see* March 2009 Mem. Op. at 6, upon further consideration, the Court **VACATES** its earlier finding. *See* Fed. R. Civ. P. 54(b) (providing, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). As this Court recently explained, § 12-309 may only be satisfied by two types of notice: (i) written notice to the Mayor of the District; or (ii) a report prepared by the Metropolitan Police Department in the regular course of duty. *See Martin v. District of Columbia*, 720 F. Supp. 2d 19, 24 (D.D.C. 2010).

Because § 12-309 "is to be construed narrowly against claimants," *Owens*, 993 A.2d at 1088 (internal quotation marks omitted), the Court cannot conclude that plaintiff's letter to the District of Columbia Public School's Office of Human Resources satisfied § 12-309. *See also, e.g.*, *Brown v. District of Columbia*, 251 F. Supp. 2d 152, 165 (D.D.C. 2003) (finding that the plaintiff failed to satisfy § 12-309 when she sent letters to the District's police chief, D.C. Corporation Counsel for the District of Columbia, the Office of the United States Attorney

for the District of Columbia, and other local government officials).  Accordingly, to the extent that plaintiff seeks unliquidated damages from the District for her DCHRA claims, the Court finds that these claims are barred for failure to comply with § 12-309.[12]

### b.  DCHRA Discrimination Claims

The Court must now determine whether summary judgment is warranted as to plaintiff's DCHRA claims for hostile work environment, sex discrimination, and age discrimination insofar as plaintiff seeks liquidated damages for these claims.  For the reasons set forth above, the Court finds that defendant is entitled to summary judgment on plaintiff's claims for hostile work environment and sex discrimination under the DCHRA.  *See supra* Section III.B.i.b (finding that the totality of circumstances presented in the record before the Court does not rise to the level necessary to support a hostile work environment claim) and Section III.B.ii.b (concluding that plaintiff failed to put forth sufficient evidence to rebut defendant's legitimate,

---

[12]    Section 12-309 only requires notice for actions seeking unliquidated damages, such as compensatory and punitive damages. Plaintiff's DCHRA claims are not barred, therefore, to the extent that she is seeking back pay and other equitable relief.  *See Blocker-Burnette*, 730 F. Supp. 2d at 204-05 (explaining that awards of back pay and other equitable relief are not barred by a party's failure to comply with § 12-309, while claims for compensatory and punitive damages are barred if notice is not given).

non-discriminatory reasons for plaintiff's termination).
Plaintiff's only remaining claim, therefore, is her claim for age discrimination under the DCHRA. For the reasons discussed below, the Court finds that summary judgment must be awarded to defendant on this claim as well.

"[A] claimant under the DCHRA, if he [or she] is to survive summary judgment, must show a reasonable jury could find his [or her] age 'had a determinative influence on the' challenged employment action." *Schuler*, 595 F.3d at 376 (citing *Washington Convention*, 953 A.2d at 1073). Having closely reviewed the record in this case, the Court finds that in light of defendant's legitimate, non-discriminatory reasons for plaintiff's termination, no reasonable jury could find that plaintiff's age either "'had a determinative influence'" upon defendant's decision to terminate her or was the "'but-for' cause of that decision." *Id.*[13] Accordingly, the Court hereby **GRANTS** defendant's motion for summary judgment as to plaintiff's age discrimination claim under the DCHRA.

---

[13]    Indeed, plaintiff provides no response to defendant's assertion that "[she] has provided no evidence that her age was a factor in her termination from her position as Principal of Anacostia High School on July 23, 2003," Def.'s Mot. at 13. *See generally* Pl.'s Opp'n.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** defendant's motion for summary judgment.  An Amended Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **April 7, 2011**